Filed 5/22/15

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| TERRENCE LEE YOHNER, | D065985 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2013-00077670) |
| CALIFORNIA DEPARTMENT OF JUSTICE, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Ronald L. Styn, Judge. Affirmed.

Garcia & Birge and Marian H. Birge for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Colton, Theodore M. Cropley, Seth M. Friedman, and Kimberly Donohue, Deputy Attorneys General, for Defendant and Respondent.

# I.

## INTRODUCTION

Terrence Lee Yohner filed this action in an attempt to prevent the California Department of Justice (the Department) from listing his name and information concerning a sexual offense that he committed, on its Megan's Law Internet Web site.[1] Yohner suffered a conviction for committing a lewd act on his stepgranddaughter in violation of Penal Code section 288, subdivision (a).[2] Section 290.46 mandates that the Department post information concerning sex offenders and their crimes on an Internet Web site. Section 290.46, subdivision (e)(2)(D)(i) provides that, when specified criteria are met, a "victim's parent, stepparent, sibling, or grandparent" may apply for and receive an exclusion from the Web site. Yohner filed an application for exclusion from the Department's Web site. The Department denied his application, reasoning that because Yohner was the victim's stepgrandparent, rather than her grandparent, he was not eligible for the exclusion. Yohner then filed a petition for writ of mandate in the trial court in which he requested that the trial court direct the Department to exclude him from the Web site. The trial court denied the petition.

---

[1]    The Department makes information about registered sex offenders available to the public via an Internet Web site, commonly known as the "Megan's Law" Web site. (See *In re S.B.* (2013) 222 Cal.App.4th 612, 620, fn. 5.)

[2]    Unless otherwise specified, all subsequent statutory references are to the Penal Code.

On appeal, Yohner claims that the trial court erred in interpreting the exclusion provided in section 290.46, subdivision (e)(2)(D)(i) as not applying to stepgrandparents. Yohner also contends that 290.46, subdivision (e)(2)(D)(i) is unconstitutional if interpreted not to apply to stepgrandparents. We affirm the judgment.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

In May 2009, Yohner was convicted of one count of committing a lewd act upon a child under the age of 14, in violation of section 288, subdivision (a). The victim was the daughter of Yohner's stepdaughter. At sentencing, the trial court suspended imposition of sentence and placed Yohner on four years of formal probation, subject to various conditions, including that he serve 365 days in the custody of the sheriff.

In 2013, Yohner successfully completed probation and applied for an exclusion from the Department's Web site. The Department denied the application, reasoning in part:

> "According to page 2 of the 'Probation Officer's Report' that you submitted, the defendant is the victim's step-grandparent. Specifically, page 2 of the Probation Officer's Report states, 'Between June 2006 and June 2007 the 61-year-old defendant repeatedly molested his then-8-year-old step granddaughter during overnight visits in his home.' Because Penal Code section 290.46, subdivision (e)(2)(D)(i), states that he is eligible for exclusion only if he was the victim's 'parent, stepparent, sibling, or grandparent,' and does not include step-grandparent . . . the application has been denied."

Yohner filed a petition for writ of mandate requesting that the trial court direct the Department to exclude him from the Web site. In a memorandum in support of his petition, Yohner contended that the word "grandparent" in section 290.46, subdivision (e)(2)(D)(i) should be interpreted to include stepgrandparents. In support of this

3

argument, Yohner contended that "[t]he explicit inclusion of stepparents [in section 290.46, subdivision (e)(2)(D)(i)] clearly demonstrates that such closely related individuals need not be biologically related to the victim to be able to apply for exclusion." Yohner further contended, "[S]tep-grandparents are implicit in the class of grandparents eligible for exclusion, despite the fact that they are not expressly enumerated in the statute."

Yohner argued that, in the alternative, to interpret the statute as not applying to stepgrandparents would be unconstitutional. In support of this contention, Yohner asserted that "grandparents and step-grandparents are similarly situated within the family hierarchy," and that because they "are equally as likely as their biological counterparts to forge a close relationship with the child due to shared time and space, they must not be treated any differently by being denied exclusion under [section] 290.46[, subdivision] (e)(2)(D)(i), particularly where they demonstrate a low risk of recidivism."

The Department filed a response/opposition to the petition. The Department argued that Yohner's contention that the term "grandparent" in section 290.46, subdivision (e)(2)(D)(i) should be interpreted as including stepgrandparents was untenable, reasoning:

> "[B]y petitioner's logic, the term 'parent' [in section 290.46, subdivision (e)(2)(D)(i)] would include a stepparent. That would render the statute's express inclusion of the term 'stepparent' meaningless surplusage."

The Department argued that, when read as a whole, section 290.46, subdivision (e)(2)(D)(i) unambiguously excludes stepgrandparents from its scope. The Department

4

further maintained that the court should not "rewrite section 290.46 so as to include step-grandparents where the Legislature omitted them."

The Department also maintained that the statute was constitutional. In support of this contention, the Department argued that stepgrandparents and grandparents are not similarly situated in that a grandparent is "more likely to have 'close family ties' " to a grandchild than is a stepgrandparent. (Citing *Doe v. California Dept. of Justice* (2009) 173 Cal.App.4th 1095, 1111 (hereafter, *C.G. Doe*).) The Department further noted that in *C.G. Doe*, this court concluded that there was "no equal protection violation in limiting the exclusion[3] to parents, stepparents, siblings and grandparents, as there is a rational basis for differentiating between them and more distant family members." (*Id*. at p. 1112.) The Department argued, "[i]f the Legislature may rationally exclude blood relatives from section 290.46, then it may rationally exclude a distant non-blood relative like a step-grandfather."

After a hearing, the trial court entered an order denying the petition. In its order, the court concluded that it was "prohibited from rewriting the statute to include 'stepgrandparent.' " In addition, relying on *C.G. Doe*, the court rejected Yohner's contention that denying a stepgrandparent the benefit of the exclusion in section 290.46,

---

3    The exclusion at issue in *C.G. Doe* was similar in all material respects with the statutory exclusion at issue in this case. (Former § 290.46, subd. (e)(2)(C)(i), as amended by Stats. 2005, ch. 722, § 7.) The exclusion was recodified in 2008 into section 290.46, subdivision (e)(2)(D)(i). (See Stats. 2008, ch. 599, § 1.5.)

subdivision (e)(2)(D)(i) was unconstitutional.  The court subsequently entered a judgment denying the petition.

Yohner timely appeals.

## III.

## DISCUSSION

A.    *The term "grandparent" in section 290.46 does not encompass stepgrandparents*

Yohner claims that the term "grandparent" in section 290.46 should be interpreted to include stepgrandparents, and that the trial court erred in rejecting this interpretation of the statute and denying his petition for writ of mandate on this basis.  Yohner's claim raises an issue of statutory interpretation, and we therefore apply the de novo standard of review.  (*Doe v. Brown* (2009) 177 Cal.App.4th 408, 417 [applying de novo standard of review to claim that the trial court erred in denying petition for writ of mandate where claim was based on issue of statutory interpretation].)

1.   *Governing law*

     a.    *Megan's Law*

Section 290 requires that persons who have been convicted of certain offenses register in accordance with the Sex Offender Registration Act.[4]  In 2004, the Legislature enacted section 290.46, a statute commonly known as Megan's Law.  (Stats. 2004, ch. 745, § 1.)  "California's Megan's Law provides for the collection and public disclosure of information regarding sex offenders required to register under section 290."  (*C.G. Doe, supra,* 173 Cal.App.4th at p. 1102.)  Section 290.46 requires that the Department make available to the public on an Internet Web site information concerning certain registered sex offenders.

Section 290.46, subdivision (e) provides a mechanism by which certain sex offenders may file an application for exclusion from the Internet Web site.  Section 290.46, subdivision (e) provides in relevant part:

> "(e)(1) If a person has been convicted of the commission or the attempted commission of any of the offenses listed in this subdivision . . . that person may file an application with the Department of Justice, on a form approved by the department, for exclusion from the Internet Web site. . . .
>
> "(2) This subdivision shall apply to the following offenses:
>
> "[¶] . . . [¶]
>
> "(D)(i) An offense for which the offender successfully completed probation, provided that the offender submits to the department a certified copy of a probation report, presentencing report, report prepared pursuant to Section 288.1, or other official court document that clearly demonstrates that the offender was the victim's *parent, stepparent, sibling, or grandparent* and that the crime did not involve either oral copulation or penetration of the vagina or rectum of either the victim or the offender by the penis of the other or by any foreign object."  (Italics added.)

---

4      "Sections 290 to 290.024, inclusive, shall be known and may be cited as the Sex Offender Registration Act."  (§ 290, subd. (a).)

7

b.    *Principles of statutory interpretation*

In *Doe v. Brown*, *supra*, 177 Cal.App.4th at page 417, this court outlined the following well-established rules of statutory interpretation:

> " 'In construing any statute, "[w]ell-established rules of statutory construction require us to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law." [Citation.] "We first examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent. [Citation.] The words of the statute should be given their ordinary and usual meaning and should be construed in their statutory context." [Citation.] If the statutory language is unambiguous, "we presume the Legislature meant what it said, and the plain meaning of the statute governs." [Citation.]' [Citation.]
>
> " 'If, however, the statutory language is ambiguous or reasonably susceptible to more than one interpretation, we will "examine the context in which the language appears, adopting the construction that best harmonizes the statute internally and with related statutes," and we can " ' "look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." ' " [Citation.]' [Citation.]
>
> " ' "We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." [Citation.]' [Citation.]"

2.    *Application*

Yohner argues that the word "grandparent" should be interpreted to include stepgrandparents, because, according to Black's Law Dictionary, "a 'grandfather' is the father of either of one's parents, and a 'grandmother' is the mother of either of one's parents." (Citing Black's Law Dictionary (6th ed. 1990), p. 699.) Yet, a *step*grandparent is *not* the father or mother of a person's parents. For example, Yohner was not the father of the victim's mother—he was her stepfather. A stepfather is clearly not legally the same as a father. The court in *In re Jodi B.* (1991) 227 Cal.App.3d 1322 explained the relationship of a stepparent and stepchild as follows:

8

"No such fundamental bond is recognized . . . in the stepparent-stepchild relationship. [¶] The status of stepparent arises solely as a result of the marriage of that person to the natural parent. [Citation.] A stepparent bears no legal obligation to contribute directly to the support of the child [citations], and upon the termination of the marriage the stepparent-stepchild relationship ceases." (*Id*. at pp. 1328-1329.)

Yohner fails to cite a single case in which the term "parent" has been interpreted to include stepparents, or the term "grandparent" has been interpreted to include stepgrandparents. Moreover, the Legislature routinely distinguishes between parents and stepparents and between grandparents and stepgrandparents in statutory text. (See, e.g., Prob. Code, § 6454 ["For the purpose of determining intestate succession by a person or the person's issue from or through a . . . *stepparent*, the relationship of *parent* and child exists between that person and the person's . . . stepparent" under certain specified circumstances]; Fam. Code, § 3101 [ differentiating between a "*birth parent*" and a "*stepparent*" for purposes of establishing stepparent visitation]; Veh. Code, § 5101.2, subd. (g) ["*For purposes of this section*, 'family' means *grandparents*, *stepgrandparents, parents*, *stepparents*, siblings, stepsiblings, stepchildren, natural-born children, or adopted children of the person issued the special license plates under subdivision (a)" (italics added)].)

Indeed, the Legislature differentiated stepparents and parents in the statute at issue in this case, section 290.46, subdivision (e)(2)(D)(i). Such statutory language strongly supports the conclusion that the Legislature intended that the terms "parent" and "grandparent" *not* include stepparents and stepgrandparents, respectively. Given that section 290.46, subdivision (e)(2)(D)(i) refers to both "parent," and "stepparent," it is not reasonable to interpret the term "parent" as referring to stepparents, since, as the

9

Department argues, such an interpretation would render the statute's express inclusion of the term "stepparent" surplusage. (See *Williams v. Superior Court* (1993) 5 Ca1.4th 337, 357 ["An interpretation that renders statutory language a nullity is to be avoided"].) We are similarly unpersuaded by Yohner's contention that "once 'stepparents' are included, by natural extension, their grandparents are also included."[5] Such reasoning contravenes the well-established maxim of statutory construction, *expressio unius est exclusio alterius,* which provides that "if exemptions are specified in a statute, we may not imply additional exemptions unless there is a clear legislative intent" to provide for such exemptions. (*Rojas v. Superior Court* (2004) 33 Ca1.4th 407, 424.)

Moreover, there certainly is no evidence of a clear legislative intent to include stepgrandparents within the scope of the exclusion in section 290.46, subdivision (e)(2)(D)(i). On the contrary, the legislative history of section 290.46 is consistent the conclusion that stepgrandparents do not qualify for the exclusion. In *C.G. Doe, supra,* 173 Cal.App.4th at pages 1102-1103, this court outlined that history as follows:

> "Section 290.46 originally allowed offenders to apply to the Department for exclusion from the Megan's Law Web site on proof they successfully completed probation granted under section 1203.066. [Citation.] At the time, section 1203.066 allowed probation for certain serious sex offenses when 'the defendant is the victim's natural parent, adoptive parent, stepparent, relative, or is a member of the victim's household who has lived in the victim's household.' [Citation.][6] The exclusion applied to 'a very narrow category of

---

[5]  Although Yohner's phrasing is unclear, we believe that he intends to argue that once the Legislature specified that a "stepparent" could apply for the exclusion, it was unnecessary for the Legislature to further specify that stepgrandparents are also eligible.

[6]  In the omitted footnote, the *C.G. Doe* court stated, "Currently, section 1203.066, subdivision (d)(1)(A) allows probation for 'a member of the victim's household.' " (*C.G. Doe, supra*, 173 Cal.App.4th at p. 1102, fn. 4.)

10

nonviolent, intra-familial offenders convicted of child molestation who, unlike all other sex offenders, are eligible for probation." '  The Senate Committee on Public Safety explained that sometimes such cases can be prosecuted only because ' "family member witnesses are willing to cooperate with prosecutors because of the availability of probation." ' (Sen. Com. on Pub. Safety, Analysis of Assem. Bill No. 1323 (2005–2006 Reg. Sess.), as amended April 13, 2005, for hearing on June 28, 2005, p. N, quoting Sen. Com. on Pub. Safety, Analysis of Assem. Bill No. 488 (2003–2004 Reg. Sess.), as amended June 14, 2004, for hearing on June 22, 2004, p. T.)[7]

"[¶] . . . [¶]

"Effective October 7, 2005, however, the Legislature amended section 290.46 to limit the availability of the exclusion.  It now applies only when an offender proves he 'was the victim's parent, stepparent, sibling, or grandparent and that the crime did not involve either oral copulation or penetration of the vagina or rectum of either the victim or the offender by the penis of the other or by any foreign object.' ([Former] § 290.46, subd. (e)(2)(C)(i), as amended by Stats. 2005, ch. 722, § 7.)"  (Fn. omitted.)

The *C.G. Doe* court stated that this history demonstrated an intent to "balance the interests of *narrowing the exclusion* to protect the public and protecting children victimized by their *closest relatives*."  (*C.G. Doe, supra*, 173 Cal.App.4th at p. 1112, italics added; see *id*. at p. 1111 ["It appears the Legislature intended to preserve close family ties when possible, and the privacy of child victims, by not posting personal information on the Web site about the victims' closest relatives"].)  Interpreting the exclusion in section 290.46, subdivision (e)(2)(D)(i) as not applying to stepgrandparents is consistent with this legislative purpose.

Yohner also notes that, when section 290.46, subdivision (e) was amended in 2005, the Legislature did not include a reference to "adoptive parent."  He contends that

---

7    We grant Yohner's unopposed request that we take judicial notice of Senate Committee on Public Safety, Analysis of Assembly Bill No. 1323 (2005–2006 Reg. Sess.), as amended April 13, 2005.  (See Evid. Code, §§ 452, subd. (c) [judicial notice may be taken of "Official acts of the legislative . . . departments . . . of any state of the United States"], 459 ["reviewing court may take judicial notice of any matter specified in [Evidence Code] Section 452"].)

this omission "cannot reasonably be construed to mean [the Legislature] intentionally barred adoptive parents" from obtaining an exclusion, and that "[s]imilarly, the fact that the Legislature narrowed the group of eligible persons to include 'grandparents' rather than all relatives or persons who did, or had, lived in the victim's household does not mean that it intended to carve out step-grandparents for any different treatment."

The reason that the Legislature did not include a reference to "adoptive parent" in the amended version of section 290.46, subdivision (e) is presumably because such a reference was unnecessary. "[A]n adopted person and the adopting person are, by law, in a parent-child relationship the same as a natural parent and child." (*Ehrenclou v. MacDonald* (2004) 117 Cal.App.4th 364, 372.) The same is not true of a stepparent and a stepchild. (*In re Jodi B., supra*, 227 Cal.App.3d at p. 1328 ["adopted children and their adoptive parents are considered by law to bear 'the legal relation of parent and child, and have all the rights[,] and be subject to all the duties[,] of that relation.' [Citation.] No such fundamental bond is recognized, on the other hand, in the stepparent-stepchild relationship."].) Thus, we may not infer from the fact that the Legislature did not include a reference to adoptive parents in section 290.46 that the Legislature intended to include stepgrandparents with the meaning of the term "grandparent."

Finally, we reject Yohner's contention that to interpret "grandparent" in section 290.46, subdivision (e)(2)(D)(i) as not embracing stepgrandparents would produce absurd results. In support of this contention, Yohner asserts that it would be absurd for a

12

biological grandparent to benefit from the exclusion while denying the benefit to a stepgrandparent, and that it is absurd to permit a stepparent to benefit from the exclusion but to deny a stepgrandparent such a benefit. We see nothing absurd about such results. That lawmaking "inevitably calls for line drawing does not make the line drawing absurd." (*Magness v. Superior Court* (2012) 54 Cal.4th 270, 279-280.)

Accordingly, we conclude that the term "grandparent" in section 290.46 does not include stepgrandparents.

B.      *Section 290.46, subdivision (e)(2)(D)(i) is constitutional in its exclusion of stepgrandparents*

Yohner claims that section 290.46, subdivision (e)(2)(D)(i) violates "equal protection principles," to the extent that it is interpreted not to include stepgrandparents within its scope. We apply the de novo standard of review to Yohner's claim. (See, e.g., *In re H.K.* (2013) 217 Cal.App.4th 1422, 1433 ["We address constitutional questions de novo"].)

1.      *Governing law*

"In reviewing an equal protection challenge, the courts generally apply one of two tests—the rational relationship test or the strict scrutiny test. [Citation.] The more stringent strict scrutiny test generally applies to cases involving 'suspect classifications' or touching on 'fundamental interests.' " (*Fenn v. Sherriff* (2003) 109 Cal.App.4th 1466, 1489.)

13

In *C.G. Doe, supra*, 173 Cal.App.4th 1095, appellant, the uncle of a victim of a sexual offense, claimed that the Legislature's restriction of the exclusion in section 290.46, subdivision (e) to parents, stepparents, siblings and grandparents violated his right to equal protection. The *C.G. Doe* court rejected the appellant's claim that disclosure on the Department's Web site of his sexual offenses implicated his fundamental liberty interests in privacy and reputation. (*C.G. Doe*, *supra*, at p. 1113.) The *C.G. Doe* court reasoned that the United States Supreme Court had rejected such an argument with respect to a similar statutory scheme on the ground that disclosure is based on the fact of conviction, and the " 'offender has already had a procedurally safeguarded opportunity to contest' " the facts leading to that conviction. (*Ibid*., quoting *Connecticut Dept. of Public Safety v. Doe* (2003) 538 U.S. 1, 7.)

In analyzing the appellant's equal protection claim, the *C.G. Doe* court outlined the following well-established law governing such claims:

> "Both the federal and state constitutions guarantee to all persons the 'equal protection of the laws.' (U.S. Const., 14th Amend., § 1; Cal. Const., art. I, § 7.) ' "The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner." [Citations.] This initial inquiry is not whether persons are similarly situated for all purposes, but "whether they are similarly situated for purposes of the law challenged." ' [Citation.]
>
> " 'When a showing is made that two similarly situated groups are treated disparately, the court must then determine whether the government has a sufficient reason for distinguishing between them.' [Citation.] ' "[I]n areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against [an] equal protection challenge *if there is any reasonable conceivable state of facts that could provide a rational basis for the classification.* [Citations.] . . ." ' [¶] The party raising an equal protection challenge has the burden of establishing unconstitutionality. . . . " (*C.G. Doe, supra*, 173 Cal.App.4th at pp. 1110-1111.)

The *C.G. Doe* court applied this law in concluding that appellant, as the uncle of the victim, was not similarly situated to the relatives eligible for the exclusion, reasoning, "extended relatives such as aunts, uncles and cousins are not similarly situated to parents, stepparents, siblings and grandparents, because the latter group is more likely to live in the same home as a child victim of sexual abuse, and to have closer ties to the child." (*C.G. Doe, supra*, 173 Cal.App.4th at p. 1111.)  The *C.G. Doe* court also concluded that "the limitation of the exclusion is rationally related to a legitimate governmental objective" (*ibid*), namely, restricting the exclusion to those family members to a victim's closest relatives, since in those circumstances the offender is more likely to live with the victim and recidivism rates are likely to be low.  (*Id*. at p. 1112.)

2.      *Application*

Citing *Burt v. County of Orange* (2004) 120 Cal.App.4th 273 (*Burt*), Yohner contends that section 290.46 implicates his fundamental right to familial and informational privacy and that this court must therefore apply the strict scrutiny test in determining whether the statute is constitutional.  *Burt* is clearly distinguishable.  To begin with, the *Burt* court did not hold that a disclosure scheme such as that provided in section 290.46 implicated a fundamental liberty interest and therefore necessitated the application of strict scrutiny.  Rather, in *Burt*, the court concluded that a petitioner's right to due process and familial privacy required that she be provided the opportunity to rebut a charge of suspected child abuse reported in a governmental database where the report stemmed from an ex parte investigation by a governmental agency.  (*Burt*, *supra*, at pp.

15

284-286.) Unlike the petitioner in *Burt*, Yohner had the chance to rebut the allegations against him before any information was published on the Megan's Law Web site. (See *C.G. Doe, supra*, 173 Cal.App.4th at p. 1113 [explaining that "when registration and disclosure is based on the fact of conviction, the 'offender has already had a procedurally safeguarded opportunity to contest,' " quoting *Connecticut Dept. of Public Safety v. Doe*, *supra*, 538 U.S. at p. 7.) Accordingly, we conclude, as did the *C.G. Doe* court, that section 290.46 does not implicate the fundamental right to privacy (*C.G. Doe, supra*, at p. 1107), and we therefore reject Yohner's contention that we must apply the strict scrutiny test in determining the statute's constitutionality.

We also reject Yohner's contention that the statute fails to pass rational basis scrutiny. To begin with, stepgrandparents and grandparents are not similarly situated. A grandparent has a biological tie to the child, and the law has long recognized the distinction between those having biological ties to a child and those whose relationship is premised on marriage. (See *In re Jodi B.*, *supra*, 227 Cal.App.3d at pp. 1328-1329 ["We find it inconceivable that the Legislature intended that fundamental parenting rights attach to one who is not bound to the child either biologically or by securing the legally recognized status of parent and child through formal adoption"].) Indeed, despite Yohner's rhetorical assertions that it would be "senseless" and would defy "common sense" for the Legislature to treat grandparents and stepgrandparents differently in this context, Yohner fails to present a single example in which the law treats grandparents and stepgrandparents identically. Because Yohner has failed to carry his burden of

16

demonstrating that grandparents and stepgrandparents are similarly situated, his equal protection claim fails. (*C.G. Doe, supra*, 173 Cal.App.4th at p. 1111.)

Even assuming that grandparents and stepgrandparents were sufficiently similarly situated to warrant equal protection scrutiny, the Legislature's limitation of the exclusion to grandparents is clearly rationally related to a legitimate governmental objective. The *C.G. Doe* court noted that in narrowing the exclusion in section 290.46, the Legislature sought to limit the exclusion to a victim's "closest relatives." (*C.G. Doe, supra*, 173 Cal.App.4th at p. 1111.) The Legislature could have rationally concluded that a victim's relationship with a biological grandparent is likely to be of greater permanence than a relationship with a stepgrandparent based on marriage.[8] This being the case, the Legislature could have rationally concluded that, in the case of a stepgrandparent, the public safety benefits to be gained by disclosure on the Web site outweigh any potential family preservation goals fostered by the exclusion. (See *ibid.*)

Accordingly, we conclude that section 290.46, subdivision (e)(2)(D)(i) is constitutional in its exclusion of stepgrandparents.

---

[8]     As the Department notes, "[Yohner's] own situation underscores the ephemeral and removed nature of a stepgrandparent's relationship to a stepgrandchild." In his petition, Yohner stated that "[d]uring the prosecution of the predicate offense, [Yohner] and the victim's maternal grandmother separated, and a judgment of dissolution was entered on May 28, 2010." Thus, Yohner no longer has a familial connection to the victim.

IV.

DISPOSITION

The judgment is affirmed.


                                               _____

                                                        AARON, J.

WE CONCUR:


_____

    HALLER, Acting P. J.


_____

       McDONALD, J.

18