AARON, J.
*392 I.
INTRODUCTION
George Corley filed this action against his former employer, the San Bernardino *321 County Fire Protection District (the District).[1] The trial court held a jury trial on a single cause of action for age discrimination under the *393 California Fair Employment and Housing Act ( Gov. Code, § 12900 et seq. ).[2] The jury rendered a special verdict in which it found that Corley's age was a substantial motivating reason for the District's termination of his employment and awarded damages for lost earnings. The trial court subsequently entered a judgment in favor of Corley against the District awarding Corley $597,629 in damages, $853,443 in attorney fees, and $40,733 in costs.
On appeal, the District contends that the trial court erred in denying its request to instruct the jury pursuant to a provision in the Firefighters' Procedural Bill of Rights (§ 3254, subd. (c) ). The District also claims that the trial court erred in instructing the jury that "the use of salary as the basis for differentiating between employees when terminating employment may be a factor used to constitute age discrimination" if the employer's termination policy adversely affects older workers. The District further maintains that there is insufficient evidence to support the jury's award of damages based on its implicit finding that Corley would have been promoted but for the District's discrimination. Finally, the District claims that the trial court abused its discretion in applying a multiplier in awarding Corley statutory attorney fees. In the published portion of the discussion, we interpret section 3254, subdivision (c) and conclude that the trial court did not err in refusing to instruct the jury pursuant to this provision. In unpublished portions of the discussion, we conclude that the District fails to establish any reversible error with respect to its remaining claims. Accordingly, we affirm the judgment.
II.
FACTUAL BACKGROUND
1. Corley's career
In 2003, after a lengthy period of employment as a firefighter with the United States Forest Service, Corley accepted a position with the District as a battalion chief. Corley was promoted to the rank of division chief in 2005. While working for the District, Corley received numerous awards. A former District fire chief testified that Corley was "doing a very good job dealing with the communities" that he served. Corley's employee file contained no evidence of discipline. In his 2010 performance evaluation, Corley received an "exceeds standards" overall rating.
2. Corley's termination
In May 2011, the County of San Bernardino's Chief Executive Officer, Greg Devereaux, appointed Mark Hartwig as Fire Chief for the District. Chief *394 Hartwig terminated Corley's employment with the District in February 2012. At the time of his discharge, Corley was 58 years old, and was the oldest of the District's six division chiefs.
3. Evidence of age discrimination related to Corley's termination
In July 2011, Chief Hartwig and his deputy chief reassigned Corley to a location *322 far from where Corley had worked for his entire career, to a region with a firefighting landscape with which Corley had little experience. Corley presented evidence from which the jury could infer that Chief Hartwig ordered the reassignment to encourage Corley to retire.
Corley also presented extensive evidence that the District's stated reason for his termination-incompatibility of management style-was a pretext for age discrimination. For example, Chief Hartwig testified that among the reasons that led him to conclude that Corley's management style was incompatible with his own was that Corley failed to prepare a contingency plan that Hartwig had asked all division chiefs to prepare. However, Chief Hartwig acknowledged that he had never asked for, nor received, a completed contingency plan from any of the division chiefs.[3]
Corley also testified that he did not learn of any of the reasons that Chief Hartwig offered for concluding that Corley lacked a compatible management style until after he was terminated and filed this action. Further, while it had been the practice of the District to use progressive discipline with its employees, Corley did not receive any progressive discipline before being terminated. While Corley's direct supervisor, former deputy fire chief Dan Odom, testified that he had given Corley verbal warnings to improve his management style, Odom also acknowledged that he had never documented such warnings, as is required. Odom also acknowledged that he had not given Corley any written warnings or placed him on a work performance improvement plan.
Chief Hartwig promoted Donald Trapp to serve as Corley's replacement. Trapp was 48 years old at the time of his promotion to division chief. Prior to promoting Trapp, Chief Hartwig altered the qualifications for division chief to *395 remove a long-standing District requirement that an applicant for the position have a minimum of two years of battalion chief experience. Trapp could not have become a division chief but for the change because he lacked the necessary battalion chief experience.
Union representative and District firefighter Bret Henry recalled that Chief Hartwig was frustrated that Corley would not retire. When asked whether he had ever heard Trapp say that he "wanted to get rid of older workers," Henry responded in the affirmative. At Devereaux's request, Henry prepared a list of chief officers. The list included the names and corresponding ranks of all of the chief officers in the District. Trapp knew of the list and admitted that Corley's name was on the list. Corley believed that the list was used to target chief officers for termination in order to replace them with younger chief officers.
According to a District employee, Corley's salary and benefits were $11,372 more than Trapp's when Trapp replaced him as division chief. In addition to these direct savings that resulted from Corley's termination, Corley and another former District division chief testified that the District would achieve additional "cascading"
*323 savings as lower paid employees were promoted in the wake of Trapp's promotion to division chief.
III.
DISCUSSION
A. The trial court did not err in denying the District's request to instruct the jury pursuant to a special instruction modeled on a provision in the Firefighters' Procedural Bill of Rights
The District claims that the trial court erred in denying its request to instruct the jury pursuant to a special instruction modeled on a provision contained in the Firefighters' Procedural Bill of Rights (the Act).
We conclude that the trial court properly refused to instruct the jury pursuant to the proffered instruction. As discussed below, the provision of the Act on which the District based its proposed special instruction, section 3254, subdivision (c), pertains only to a jurisdiction's "fire chief," and it is undisputed that Corley was never the District's fire chief.
1. Factual and procedural background
The District filed a written request that the court instruct the jury pursuant to the following special jury instruction:
*396 "A fire chief shall not be removed by a public agency or appointing authority without providing that person with written notice, the reason or reasons for removal, and an opportunity for administrative appeal.
"The removal of a fire chief by a public agency or appointing authority, for the purpose of implementing the goals or policies, or both, of the public agency or appointing authority, or for reasons including, but not limited to, incompatibility of management styles or as a result of a change in administration, shall be sufficient to constitute 'reason or reasons.' "
During a hearing on jury instructions, the District argued that the trial court should provide the instruction because "Chief Corley was provided with all of these rights required by [section 3254, subdivision (c) ] as it states in his termination letter ... and it also shows that he was terminated for the reasons that are expressly permitted in [section 3254, subdivision (c) ], specifically change in administration and incompatibility of management style."
Corley's counsel objected the instruction on several grounds, including that the provision on which the instruction was based, section 3254, subdivision (c), applies only to the "lead fire chief" of a jurisdiction. The court responded by asking Corley's counsel whether it would be acceptable for the court to provide only the first sentence of the instruction to the jury. Corley's counsel responded:
"[I]t would not be, your Honor, because again, the first sentence still says a fire chief and everything here in the [Act] regarding fire chief is implying the actual lead fire chief. And it's not applicable in our case."
After further discussion during which the court indicated its willingness to provide the first sentence of the proposed instruction if it were modified to refer to a "division chief,"[4] the District's counsel stated, "Well, I would prefer to not have it at all if it's just going to be the first paragraph, the first sentence."
*324 The court responded, "We'll just take it out."
2. Governing law
a. Applicable law governing a party's request for a jury instruction
"A party is entitled upon request to correct, nonargumentative instructions on every theory of the case advanced by him which is supported by *397 substantial evidence. The trial court may not force the litigant to rely on abstract generalities, but must instruct in specific terms that relate the party's theory to the particular case." ( Soule v. General Motors Corp. (1994) 8 Cal.4th 548, 572, 34 Cal.Rptr.2d 607, 882 P.2d 298 ( Soule ).) " 'The trial court is not required to give instructions [that] are not correct statements of the law or are incomplete or misleading [citation].' " ( Norman v. Life Care Centers of America, Inc. (2003) 107 Cal.App.4th 1233, 1242, 132 Cal.Rptr.2d 765.)
b. Relevant principles of statutory interpretation
In Yohner v. California Dept. of Justice (2015) 237 Cal.App.4th 1, 7, 187 Cal.Rptr.3d 550 ( Yohner ), this court restated the following well-established rules of statutory interpretation:
" ' "In construing any statute, '[w]ell-established rules of statutory construction require us to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law.' [Citation.] 'We first examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent. [Citation.] The words of the statute should be given their ordinary and usual meaning and should be construed in their statutory context.' [Citation.] If the statutory language is unambiguous, 'we presume the Legislature meant what it said, and the plain meaning of the statute governs.' [Citation.]" [Citation.]
" ' "If, however, the statutory language is ambiguous or reasonably susceptible to more than one interpretation, we will 'examine the context in which the language appears, adopting the construction that best harmonizes the statute internally and with related statutes,' and we can ' " 'look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.' " ' [Citation.]" [Citation.]'
" ' " 'We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' " ' "
c. The Act
1. The text of the Act
In 2007, the Legislature adopted the Act. (§ 3250 et seq.; see Stats. 2007, ch. 591, § 2 (A.B. 220).) The Act "provides firefighters with certain rights *398 concerning their employment." ( Poole v. Orange County Fire Authority (2015) 61 Cal.4th 1378, 1384, 191 Cal.Rptr.3d 551, 354 P.3d 346.) Section 3254 contains various restrictions on the taking of certain punitive actions against firefighters. Section 3254, subdivisions (a), (b), (d), (f), and (g), all expressly pertain to "firefigher[s]."
Section 3254, subdivision (c), the statute on which the District based its special instruction, pertains to a "fire chief." Section 3254, subdivision (c) provides:
*325 "(c) A fire chief shall not be removed by a public agency or appointing authority without providing that person with written notice, the reason or reasons for removal, and an opportunity for administrative appeal.
"For purposes of this subdivision, the removal of a fire chief by a public agency or appointing authority, for the purpose of implementing the goals or policies, or both, of the public agency or appointing authority, or for reasons including, but not limited to, incompatibility of management styles or as a result of a change in administration, shall be sufficient to constitute 'reason or reasons.'
"Nothing in this subdivision shall be construed to create a property interest, if one does not otherwise exist by rule or law, in the job of fire chief ." (Italics added.)
Section 3251 of the Act contains a list of definitions and provides in relevant part:
"(a) 'Firefighter' means any firefighter employed by a public agency, including, but not limited to, any firefighter who is a paramedic or emergency medical technician, irrespective of rank. However, 'firefighter' does not include an inmate of a state or local correctional agency who performs firefighting or related duties or persons who are subject to Chapter 9.7 (commencing with Section 3300). This chapter does not apply to any employee who has not successfully completed the probationary period established by his or her employer as a condition of employment."
The Act does not define the term "fire chief."
2. Relevant legislative history of the Act
The legislative history of the Act makes clear that the Act "is modeled after the Public Safety Officers Procedural Bill of Rights Act (known as POBOR)." (Sen. Appropriations Committee, Fiscal Summary of Assem. Bill. 220 (2007-2008 Reg. Sess.) as amended July 2, 2007, par. 5; see e.g., Sen. Judiciary Committee, Analysis of Assem. Bill. 220 (2007-2008 Reg. Sess.) as *399 amended July 2, 2007, par. 1 ["The bill would enact the Firefighters Procedural Bill of Rights Act, to mirror the Public Safety Officers Procedural Bill of Rights Act (commonly known as POBOR) that is applicable to public safety officers"].)
d. POBOR
1. The text of section 3304, subdivision (c) of the POBOR
Section 3304, subdivision (c) of the POBOR is nearly identical to section 3254, subdivision (c) of the Act. Section 3304, subdivision (c) provides:
"No chief of police may be removed by a public agency, or appointing authority, without providing the chief of police with written notice and the reason or reasons therefor and an opportunity for administrative appeal.
"For purposes of this subdivision, the removal of a chief of police by a public agency or appointing authority, for the purpose of implementing the goals or policies, or both, of the public agency or appointing authority, for reasons including, but not limited to, incompatibility of management styles or as a result of a change in administration, shall be sufficient to constitute 'reason or reasons.'
"Nothing in this subdivision shall be construed to create a property interest, where one does not exist by rule or law, in the job of Chief of Police."
2. The legislative history of section 3304, subdivision (c)
In Robinson v. City of Chowchilla (2011) 202 Cal.App.4th 368, 134 Cal.Rptr.3d 687 ( Robinson ), the Court of Appeal reviewed *326 the legislative history of section 3304, subdivision (c) as follows:
" 'According to the bill's sponsor, "Senate Bill 2215 is a very simple bill. It provides that the Chief of Police may not be disciplined without just cause. Historically, California law enforcement has been the finest in the nation precisely because the Legislature has seen the wisdom of separating police organizations from the political process. This is why police officers, once they pass probationary status, are protected from termination except for just cause.
" ' "Ironically, a Chief of Police, who has reached the apex of his or her law enforcement career, reverts to the status of a mere probationary employee. In other words, a Chief of Police may be dismissed for any reason. Senate Bill 2215 does not guarantee that police chiefs cannot be fired. If a *400 chief fails to perform as expected, fails to follow the policy direction of the city council, or fails to properly lead the department, they can, and should be terminated or otherwise disciplined by the city council. What Senate Bill 2215 does do is protect chiefs from whimsical pressures that diminish the professionalism of the law enforcement mission." ' (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 2215 (1997-1998 Reg. Sess.) as amended May 19, 1998, p. 3.)" ( Robinson , at pp. 379-380, 134 Cal.Rptr.3d 687.)
The Robinson court also noted that the legislative history of section 3304, subdivision (c) demonstrated that the statute was enacted in response to instances in which chiefs of police had been subjected to political pressure.
"The analysis also described instances of abuse where chiefs of police were threatened with removal for inappropriate reasons by local politicians. (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 2215 (1997-1998 Reg. Sess.) as amended May 19, 1998, pp. 3-4.) In noting the arguments presented for and against the bill, the analysis included a comment from a police chief who stated the simple protections provided in the bill would help insulate chiefs from the politics in the community, which would lessen the likelihood of corruption and favoritism. (Id. at p. 5.)" ( Robinson , supra , 202 Cal.App.4th at p. 380, 134 Cal.Rptr.3d 687.)
3. Application
The text of section 3254, subdivision (c) supports the conclusion that the provision applies solely to a jurisdiction's lead "fire chief."[5] The statute refers to "a fire chief" (§ 3254, subd. (c) ), without referring to "deputy chiefs," "assistant chiefs," "division chiefs" or the like. Moreover, section 3254, subdivision (c) provides no definition of the term "fire chief," as one might expect if the statute were meant to apply to any position with the word "chief" in it. Further, the final sentence of section 3254, subdivision (c) strongly suggests that the term "fire chief" refers to a single position, namely the "job of fire chief" of a jurisdiction. (See id. , subd. (c) ["Nothing in this subdivision shall be construed to create a property interest, if one does not otherwise exist by rule or law, in the job of fire chief " (italics added) ].)
As discussed above, the text and legislative history of the Act unequivocally demonstrate *327 that the Act was modeled on the POBOR. Further, the text of section 3254, subdivision (c) of the Act and section 3304, subdivision (c) *401 of the POBOR make clear that the former was modeled on the latter. The legislative history of section 3304, subdivision (c) in turn demonstrates that that statute was enacted to apply solely to a jurisdiction's "Chief of Police." (§ 3304, subd. (c); see Robinson , supra , 202 Cal.App4th at pp. 379-380, 134 Cal.Rptr.3d 687 [reviewing the legislative history of section 3304, subdivision (c) and noting that it was passed to protect "a Chief of Police, who has reached the apex of his or her law enforcement career"].) Accordingly, interpreting section 3254, subdivision (c) as similarly pertaining solely to a jurisdiction's "fire chief," harmonizes the meaning of these two closely related statutes. (See Yohner , supra , 237 Cal.App.4th at p. 8, 187 Cal.Rptr.3d 550 [in interpreting a statute a court is to " 'examine the context in which the language appears, adopting the construction that best harmonizes the statute ... with related statutes' "].)
The District's sole statutory interpretation argument to the contrary is unconvincing.[6] The District notes that the word, "a" is an indefinite article that signals a generic reference, while the word, "the" is a definite article that refers to a specific person. The District further notes that section 3254, subdivision (c) refers to " 'a fire chief,' " (italics added) and contends, "If the Legislature had meant to refer only to the head of a fire protection agency, it would have done so by using the definite article rather than the indefinite one." However, the statute's use of the indefinite article in referring to "a fire chief" (id. , subd. (c) ), may reasonably be interpreted to reflect an intent to have the provision apply generically to all fire chiefs in the state (i.e., the heads of each jurisdiction's fire protection agency). Thus, the Legislature's use of the indefinite article "a," does not demonstrate its intent for section 3254, subdivision (c) to apply to persons other than a jurisdiction's fire chief.
Accordingly, we conclude that the trial court did not err in refusing to instruct the jury pursuant to the District's proffered special instruction premised on section 3254, subdivision (c).[7]
B.-D.**
*402 IV.
DISPOSITION
The judgment is affirmed.
WE CONCUR:
HUFFMAN, Acting P.J.
HALLER, J.
Certified for Partial Publication.*

Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts III.B, C, and D.

Corley's complaint was filed against the "San Bernardino County Fire Department ." However, the trial court entered an amended judgment against the "San Bernardino County Fire Protection District " and the appeal was taken by "San Bernardino County Fire Protection District ." (Italics added.) It is undisputed that both titles refer to the same entity.

Unless otherwise specified, all subsequent statutory references are to the Government Code.

Much of the trial focused on Corley's performance with respect to numerous matters upon which the District purportedly based its decision to terminate Corley, including: Corley's skill in managing a budget, Corley's response to a fire in January 2012, the satisfaction levels of representatives of two communities within the division that Corley managed, Corley's managerial skills in overseeing battalion chiefs, Corley's willingness to use "second alarms," in responding to certain fire incidents, Corley's response to a malfunctioning communication system, Corley's approval of payment for certain nonstandard firefighting equipment, and Corley's conversation with his supervisor about his girlfriend's potential employment with the District.

As noted in part II, ante , the District employed Corley as a division chief at the time of his discharge.

In its brief in support of a motion for new trial, the District argued that it did "not matter" whether section 3254, subdivision (c) applies solely to a jurisdiction's lead fire chief. In support of this argument, the District contended that its proffered special instruction should have been provided in order to refute Corley's evidence of pretext, even if the statute did not actually apply to a division chief such as Corley. The District did not raise this argument on appeal, and we therefore express no opinion on the issue.

The District offered the statutory interpretation argument discussed in the text in its reply brief. In its opening brief, the District did not provide any argument in support of its contention that section 3254, subdivision (c) applies to a division chief such as Corley.

In light of our conclusion, we need not consider Corley's argument that the trial court did not err in refusing to provide the special instruction because the instruction was "redundant and unnecessary." In support of this contention, Corley notes that the trial court provided a "business judgment" instruction to the jury that stated in relevant part, "[A]n employer may discharge an employee for no reason, or for a good, bad, mistaken, unwise, or even unfair reason, as long as its action is not for a discriminatory reason." Nor need we consider whether any error in failing to instruct the jury pursuant to the District's special instruction was harmless given that the trial court provided a business judgment instruction to the jury.

See footnote *, ante .