Filed 1/26/17

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ACQUA VISTA HOMEOWNERS ASSOCIATION,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MWI, INC.,<br><br>    Defendant and Appellant. | D068406<br><br><br>(Super. Ct. No. 37-2009-00104348-CU-CD-CTL) |

APPEAL from a judgment and orders of the Superior Court of San Diego County, Ronald L. Styn, Judge. Reversed and remanded with directions.

Horvitz & Levy, H. Thomas Watson, Daniel J. Gonzalez; White, Oliver & Amundson, White, Amundson, Kish & Sweeney, Daniel M. White, Steven G. Amundson and Heather N. Catron for Defendant and Appellant.

Morris, Sullivan & Lemkul, Shawn D. Morris, Matthew J. Yarling; Peters & Freedman, David M. Peters and Kyle E. Lakin for Plaintiff and Respondent.

# I.

## INTRODUCTION

Civil Code section 895[1] et seq. ("the Act") establishes a set of building standards pertaining to new residential construction and provides homeowners with a cause of action against, among others, material suppliers, for a violation of the standards (§§ 896, 936). We must determine whether the Act requires homeowners suing a material supplier under the Act to prove that the material supplier "caused, in whole or in part, a violation of a particular standard as the result of a negligent act or omission or a breach of contract." (§ 936.) We conclude that the Act requires such proof.

Our conclusion is supported by the text, structure, and legislative history of the Act, as well as this court's prior interpretation of section 936 in *Greystone Homes, Inc. v. Midtec, Inc.* (2008) 168 Cal.App.4th 1194 (*Greystone*). In *Greystone*, this court stated that "a product manufacturer is liable [under section 936] only where its 'negligent act or omission or a breach of contract' . . . caused a violation of the Act's standards." (*Id.* at p. 1216, quoting § 936, italics omitted.) Section 936 treats product manufacturers and material suppliers identically.[2]

---

[1] Unless otherwise specified, all subsequent statutory references are to the Civil Code.

[2] (See § 936 ["Each and every provision of the other chapters of this title apply to general contractors, subcontractors, *material suppliers*, *individual product manufacturers*, and design professionals to the extent that the general contractors, subcontractors, material suppliers, individual product manufacturers, and design

2

In this case, Acqua Vista Homeowners Association ("the HOA") sued MWI, Inc. ("MWI"), a supplier of pipe used in the construction of the Acqua Vista condominium development. The operative third amended complaint contained a claim for a violation of the Act's standards in which the HOA alleged that "[d]efective cast iron pipe manufactured in China [was] used throughout the building." At a pretrial hearing, the HOA explained that it was not pursuing a claim premised on the doctrine of strict liability[3] and that it was alleging a single cause of action against MWI for violations of the Act's standards.

During a jury trial, near the close of evidence, MWI filed a motion for a directed verdict on the ground that the HOA failed to present any evidence that MWI had caused a violation of the Act's standards as a result of MWI's negligence or breach of contract, as required. The trial court denied the motion, concluding that the HOA was not required to prove that any violations of the Act's standards were caused by MWI's negligence or breach of contract. In reaching this conclusion, the court relied on the final sentence of section 936, which states in relevant part, "[T]he negligence standard in this section does not apply to . . . material suppliers . . . with respect to

---

professionals caused, in whole or in part, a violation of a particular standard as the result of a negligent act or omission or a breach of contract" (italics added)].)

[3] The third amended complaint does not contain a cause of action separately styled as a cause of action for strict liability. However, the HOA had stated in its trial brief that it was pursuing a claim for strict liability and referred to allegations in its third amended complaint that it contended adequately alleged a strict liability claim.

claims for which strict liability would apply." (§ 936.)[4] After the jury rendered a verdict against MWI, MWI filed a motion for judgment notwithstanding the verdict (JNOV) on the same ground as it had raised in its motion for directed verdict, which the trial court denied for the same reason it provided in denying the motion for a directed verdict.

On appeal, MWI claims that the trial court misinterpreted the Act and, as a result, erred in denying its motion for a directed verdict and motion for JNOV. We agree. The first sentence of section 936 contains an "explicit adoption of a negligence standard for claims" under the Act against material suppliers. (*Greystone*, *supra*, 168 Cal.App.4th at p. 1216, fn. 14.) While the final sentence of section 936 is not a model of textual clarity, for the reasons explained below, standard techniques of statutory interpretation make clear that this sentence merely provides that the negligence standard applicable to claims brought against material suppliers *under the Act* does not apply to *common law* claims for strict liability against such suppliers. Since it is undisputed that the HOA's claim was brought *under the Act*, it was required to prove that MWI "caused, in whole or in part, a violation of a particular standard as the result of a negligent act or omission or a breach of contract." (§ 936.) We also conclude that because there is no evidence in the record that MWI caused a violation of the Act's

---

4      As with the first sentence of section 936, the final sentence of section 936 treats product manufacturers and material suppliers identically. (§ 936 ["However, the negligence standard in this section does not apply to any general contractor, subcontractor, *material supplier*, *individual product manufacturer*, or design professional with respect to claims for which strict liability would apply" (italics added)].)

4

standards through its negligence or breach of contract, the court erred in denying MWI's motion for a directed verdict and motion for JNOV. Accordingly, we reverse the judgment and the trial court's order denying MWI's motion for JNOV and remand the matter to the trial court with directions to grant MWI's motion for a directed verdict and to enter judgment in favor of MWI.[5]

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *The action*

The HOA filed this construction defect action in December 2009. In September 2013, the HOA filed the operative third amended complaint in which it named MWI, and others, as defendants.[6] The third amended complaint alleged a cause of action styled as "Violation of SB800[7] Construction Standards, Civil Code § 896" against all defendants, including MWI. (Boldface & italics omitted.) The cause of action contained the following relevant allegation:

> "The violations of SB800 standards by the defendants, and each
> of them, alleged herein include, but are not limited to, the
> following design, construction and/or manufacturing defects at

---

[5]  In light of our disposition, we need not consider MWI's other arguments in support of reversal of the judgment and/or the court's order denying its motion for JNOV.

[6]  The complaint also named as defendants several entities that were responsible for building and developing the project. The HOA entered into a settlement with these entities before trial.

[7]  The Act was initially adopted in 2002 pursuant to Senate Bill No. 800 (Stats. 2002, ch. 722, § 3.) Thus, references to "SB800" in this opinion are references to the Act.

the project: Defective cast iron pipe manufactured in China and used throughout the building."

B. *The trial*

The trial court held a jury trial on the HOA's claims under the Act against MWI, and another iron pipe supplier, Standard Plumbing & Industrial Supply Co. ("Standard"). At trial, the HOA presented evidence that the pipes supplied by MWI contained manufacturing defects, that they leaked, and that the leaks had caused damage to various parts of the condominium development.

MWI moved for a directed verdict on the ground that the HOA had failed to present evidence that MWI caused a violation of the Act's standards *as a result of MWI's negligence or breach of contract*. In addition, MWI requested that the trial court instruct the jury that the HOA was required to present such evidence. The trial court denied MWI's motion for a directed verdict and MWI's jury instruction requests.

C. *The jury's verdict*

The jury rendered a special verdict that responded to four questions. The first question asked the jury, "Have the cast iron pipes supplied by the Defendants at Acqua Vista leaked?" The jury responded in the affirmative with respect to both MWI and Standard. The second question asked the jury, "Have the cast iron pipes supplied by either of the Defendants to Acqua Vista corroded so as to impeded the useful life of the plumbing/sewer system?"[8] The jury again responded in the affirmative with

8    The two questions tracked two of the Act's standards for residential construction (§ 896, subds. (a)(14), (15)). (See pt. III.B.2, *post*.)

6

respect to both defendants. The third question asked the jury, "If you answered yes as to either Defendant in questions 1 or 2, what is the total amount of Plaintiffs [*sic*] damages?" The jury found that the HOA had suffered $18,500,000 in damages "[f]or the reasonable cost of repairing any violations," $7,130,000 in damages "[f]or reasonable relocation and storage expenses," and $408,909 "[f]or reasonable investigative costs."[9] Finally, the jury was asked, "For those Defendants that you answered 'Yes' to in Question 1 or Question 2, assuming 100%, what percentage of responsibility is attributable to each of the following for the damages to the Plaintiff identified in Question 3[?]" The jury responded that MWI was responsible for 92%, Standard, 8%, the "pipe installer," 0%, and the HOA, 0%.[10]

D. *The judgment*

The trial court entered a judgment against MWI in March 2015 in the amount of $23,955,796.28, reflecting MWI's 92 percent responsibility for the total damages suffered.[11]

E. *Postjudgment motions*

MWI moved for JNOV on several grounds, including that the HOA had failed to present evidence that MWI had caused a violation of the Act's standards as a result

---

[9] The jury's verdict totaled $26,038,909 in damages.
[10] As part of its defense, MWI presented evidence that some of the pipe had been improperly installed.
[11] Prior to the entry of judgment, the HOA and Standard entered into a settlement. MWI is the only appellant.

7

of MWI's negligence or breach of contract.  The trial court denied the HOA's motion for JNOV, reasoning in part:

> "MWI argues that judgment should be entered in favor of MWI because Plaintiff failed to prove a prima facie case for liability under . . . § 896.  Specifically, MWI argues Plaintiff's [*sic*] must prove negligence and causation and that Plaintiff failed to do so.  As this court previously ruled, the last sentence of . . . § 936 ['[h]owever, the negligence standard in this section does not apply to any general contractor, subcontractor, material supplier, individual product manufacturer, or design professional with respect to claims for which strict liability would apply'] removes any negligence/causation requirement in a . . . § 896 action against certain defendants, including MWI, a material supplier in this case.  The court is not persuaded by MWI's reliance on *Greystone*[, *supra*,] 168 Cal.App.4th 1194 because the issue of the effect of the last sentence of . . . § 936 was not before the Court of Appeal in *Greystone*."

MWI also filed a motion for new trial on numerous grounds, including that the trial court had failed to instruct the injury on negligence and causation with respect to the HOA's claim under the Act and that the special verdict form had not required any findings on these issues.  The trial court employed similar reasoning in denying MWI's motion for new trial as it had used in denying MWI's motion for JNOV.

F.  *The amended judgment and appeals*

MWI filed an appeal from the judgment and the order denying the motion for JNOV.  The trial court entered an amended judgment in the amount of $23,955,796.28

against MWI in July 2015.[12]  MWI filed a second notice of appeal from the original and amended judgments and the order denying the motion for JNOV.[13]

III.

DISCUSSION

*The trial court erred in denying MWI's motion*
*for a directed verdict and motion for JNOV*

MWI claims that the trial court erred in denying its motions for a directed verdict and for JNOV because there is no evidence in the record that MWI "caused, in whole or in part, a violation of a particular standard as the result of a negligent act or omission or a breach of contract" (§ 936), as is required in order for the HOA to state a claim against MWI for a violation of the Act's standards.

A.  *General principles of law governing a motion for a directed verdict and a motion*
   *for JNOV, and the applicable standard of review*

" ' "[T]he power of the court to direct a verdict is absolutely the same as the power of the court to grant a nonsuit."  [Citation.]  "A motion for a directed verdict 'is

_____

[12]    The amendments related to issues not relevant to the issue addressed on appeal.

[13]    While this appeal was pending, the HOA filed a motion for sanctions for MWI's failure to timely procure the record.  (See Cal. Rules of Court, rule 8.140.)  In its motion, the HOA acknowledged that the superior court clerk had not sent MWI a notice of default, which would have triggered a 15-day period during which MWI could cure the default.  (See Cal. Rules of Court, rule 8.140(a).)  In its opposition, MWI demonstrated that it had cured the default within 15 days of the HOA's motion.  Under these circumstances, California Rules of Court, rule 8.140(c) specifies that the motion for sanctions must be denied.  (See Cal. Rules of Court, rule 8.140(c) ["If the superior court clerk fails to give a notice required by (a), a party may serve and file a motion for sanctions under (b) in the reviewing court, *but the motion must be denied if the defaulting party cures the default within 15 days after the motion is served*" (italics added)].)  Accordingly, the HOA's motion for sanctions is denied.

9

in the nature of a demurrer to the evidence, and is governed by practically the same rules, and concedes as true the evidence on behalf of the adverse party, with all fair and reasonable inferences to be deduced therefrom.' " ' " (*Baker v. American Horticulture Supply, Inc.* (2010) 186 Cal.App.4th 1059, 1072.) " ' "A defendant is entitled to a nonsuit [or directed verdict] if the trial court determines that, as a matter of law, the evidence presented by plaintiff is insufficient to permit a jury to find in his favor." ' " (*Ibid.*) A trial court must grant a motion for JNOV whenever a motion for a directed verdict for the aggrieved party should have been granted. (Code Civ. Proc., § 629, subd. (a).)

In reviewing a trial court's ruling on a motion for a directed verdict, "the reviewing court must resolve every conflict in the testimony in favor of the plaintiff and at the same time indulge in every presumption and inference that could reasonably support the plaintiff's case." (*County of Kern v. Sparks* (2007) 149 Cal.App.4th 11, 16.) Similarly, when reviewing an order on a motion for JNOV, "an appellate court will use the same standard the trial court uses in ruling on the motion, by determining whether it appears from the record, viewed most favorably to the party securing the verdict, that any substantial evidence supports the verdict. ' " 'If there is any substantial evidence, or reasonable inferences to be drawn therefrom in support of the verdict, the motion should be denied.' " ' " (*Trujillo v. North County Transit Dist.* (1998) 63 Cal.App.4th 280, 284 (*Trujillo*).)

The proper interpretation of the Act and whether there is substantial evidence to support the HOA's claim under the Act, present questions of law that we review de

novo.  (See, e.g., *Yohner v. California Dept. of Justice* (2015) 237 Cal.App.4th 1, 7

(*Yohner*) ["Yohner's claim raises an issue of statutory interpretation, and we therefore

apply the de novo standard of review"]; *Sweatman v. Department of Veterans Affairs*

(2001) 25 Cal.4th 62, 68 [stating that where an appeal from the denial of a motion for

JNOV raises a legal issue, an appellate court reviews the question de novo].)

B.  *Section 936 requires a homeowner suing a material supplier for violating a standard under the Act to prove that the material supplier "caused, in whole or in part, a violation of a particular standard as the result of a negligent act or omission or a breach of contract"*

    1.  *Principles of statutory interpretation*

In *Yohner*, *supra*, 237 Cal.App.4th at pages 7-8, this court restated the

following well-established rules of statutory interpretation:

> " ' "In construing any statute, '[w]ell-established rules of statutory construction require us to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law.' [Citation.] 'We first examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent.  [Citation.]  The words of the statute should be given their ordinary and usual meaning and should be construed in their statutory context.' [Citation.]  If the statutory language is unambiguous, 'we presume the Legislature meant what it said, and the plain meaning of the statute governs.'  [Citation.]"  [Citation.]
>
> " ' "If, however, the statutory language is ambiguous or reasonably susceptible to more than one interpretation, we will 'examine the context in which the language appears, adopting the construction that best harmonizes the statute internally and with related statutes,' and we can ' " 'look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.' " '  [Citation.]"  [Citation.]

11

" ' " 'We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' " ' "

2. *The Act*

Section 896 provides a list of standards pertaining to residential construction, including that "[t]he lines and components of the plumbing system, sewer system, and utility systems shall not leak," (§ 896, subd. (a)(14)) and that "[p]lumbing lines, sewer lines, and utility lines shall not corrode so as to impede the useful life of the systems." (§ 896, subd. (a)(15)). Section 896 also specifies the manner by which certain entities involved in the construction process may be liable for failing to meet the standards. (§ 896.) Section 896 provides that a *builder*[14] shall be liable for a violation of the

---

[14] The Act defines "builder" as follows:

"(a) For purposes of this title, except as provided in subdivision (b), 'builder' means any entity or individual, including, but not limited to a builder, developer, general contractor, contractor, or original seller, who, at the time of sale, was also in the business of selling residential units to the public for the property that is the subject of the homeowner's claim or was in the business of building, developing, or constructing residential units for public purchase for the property that is the subject of the homeowner's claim.

"(b) For the purposes of this title, 'builder' does not include any entity or individual whose involvement with a residential unit that is the subject of the homeowner's claim is limited to his or her capacity as general contractor or contractor and who is not a partner, member of, subsidiary of, or otherwise similarly affiliated with the builder. For purposes of this title, these nonaffiliated general contractors and nonaffiliated contractors shall be treated

12

Act's standards, and states that other entities, including a *material supplier*, shall be liable for a violation of the standards *to the extent specified in Chapter 4 of the Act*. Section 896 provides in relevant part:

> "In any action seeking recovery of damages arising out of, or related to deficiencies in, the residential construction, design, specifications, surveying, planning, supervision, testing, or observation of construction, a *builder*, and to the *extent set forth in Chapter 4* (commencing with Section 910), a general contractor, subcontractor, *material supplier*,[15] individual product manufacturer, or design professional, shall, except as specifically set forth in this title, be liable for, and the claimant's[16] claims or causes of action shall be limited to violation of, the following standards, except as specifically set forth in this title."  (§ 896, italics added.)

Chapter 4 of the Act, beginning with section 910, establishes a series of prelitigation procedures that a claimant must pursue prior to filing an action against "any party alleged to have contributed to a violation of the standards."  (§ 910.)  A provision in Chapter 4—section 936—also specifies the extent to which a nonbuilder entity may be liable for a violation of the Act's standards, stating:

> "*Each and every provision of the other chapters of this title apply to general contractors, subcontractors, material suppliers, individual product manufacturers, and design professionals to the extent that the general contractors, subcontractors, material*

> the same as subcontractors, material suppliers, individual product manufacturers, and design professionals."  (§ 911.)

15  Although "material supplier" is not defined in the Act, it is undisputed that MWI is a material supplier under the Act.

16  Claimant is defined in the Act as follows:  " 'Claimant' or 'homeowner' includes the individual owners of single-family homes, individual unit owners of attached dwellings and, in the case of a common interest development, any association as defined in Section 4080."  (§ 895, subd. (f).)  It is undisputed that the HOA is a claimant under the Act.

13

*suppliers, individual product manufacturers, and design professionals caused, in whole or in part, a violation of a particular standard as the result of a negligent act or omission or a breach of contract.* In addition to the affirmative defenses set forth in Section 945.5, a general contractor, subcontractor, material supplier, design professional, individual product manufacturer, or other entity may also offer common law and contractual defenses as applicable to any claimed violation of a standard. All actions by a claimant or builder to enforce an express contract, or any provision thereof, against a general contractor, subcontractor, material supplier, individual product manufacturer, or design professional is preserved. Nothing in this title modifies the law pertaining to joint and several liability for builders, general contractors, subcontractors, material suppliers, individual product manufacturer, and design professionals that contribute to any specific violation of this title. *However, the negligence standard in this section does not apply to any general contractor, subcontractor, material supplier, individual product manufacturer, or design professional with respect to claims for which strict liability would apply.*" (§ 936, italics added.)

3. *The text and structure of the Act supports the conclusion that a homeowner/claimant suing a material supplier for violating a standard under the Act must prove that the material supplier "caused, in whole or in part, a violation of a particular standard as the result of a negligent act or omission or a breach of contract" (§ 936)*

The first sentence of section 936, when read in context with section 896, clearly and unambiguously states that a homeowner/claimant (such as the HOA) suing a material supplier (such as MWI) for violating a standard under the Act must prove that the material supplier caused, in whole or in part, a violation of a standard *as the result of a negligent act or omission or a breach of contract.* (See § 936 [stating that provisions of the Act outside of Chapter 4, including section 896, apply to "material suppliers, . . . to the extent that the . . . material suppliers . . . caused, in whole or in part, a violation of a particular standard as the result of a negligent act or omission or a

14

breach of contract"].)  The HOA does not contend otherwise.  Rather, the HOA

acknowledges that "[a] negligence standard applies to non-builders, according to the

first sentence [of section 936]."  However, as discussed in part III.B.1.c, *post*, the HOA

argues that, pursuant to the final sentence of section 936, the negligence standard in

section 936 does not apply if a plaintiff's claim *under the Act* is one for which strict

liability *would* have applied at *common law*.  In that instance, the HOA argues that the

standard of liability outlined in section 896 applies.[17]

Thus, unless the HOA is correct that the final sentence of section 936 qualifies

the standard of liability expressly stated in the first sentence of section 936 in a manner

applicable to this case, the HOA was required to prove that MWI "caused, in whole or

in part, a violation of a particular standard as the result of a negligent act or omission

or a breach of contract."  (§ 936.)  Accordingly, we must consider the meaning of the

final sentence of section 936.

> a. *The final sentence of section 936 is most reasonably interpreted as*
> *providing that the negligence standard adopted in section 936 does*
> *not apply to common law claims for strict liability*

We acknowledge that the plain language of the final sentence in section 936,

when read in isolation, is ambiguous.  (See § 936 ["However, the negligence standard

in this section does not apply to any general contractor, subcontractor, material

supplier, individual product manufacturer, or design professional with respect to

---

17    For example, the HOA argues in a supplemental brief (see fn. 38, *post*), "The
trial court correctly ruled . . . that, even if the first sentence of Section 936 imposed a
negligence or breach of contract standard, the final sentence of Section 936 removed
that requirement with respect to claims to which strict liability would apply."

claims for which strict liability would apply"].)  Despite such textual ambiguity, for the reasons stated below, an application of the techniques of statutory interpretation demonstrates that the provision should be interpreted as providing that the negligence standard specified in the first sentence of section 936 does *not* apply to *common law strict liability* claims against the specified nonbuilder entities.

To begin with, interpreting the final sentence of section 936 as making clear that the negligence standard applicable to claims under the Act does not apply to common law claims is a plausible textual interpretation of the statute.  Strict liability is a common law doctrine (see generally *Jimenez v. Superior Court* (2002) 29 Cal.4th 473, 484 (*Jimenez*) [outlining the evolution of the doctrine]), and the sentence may reasonably be read as stating that the "negligence standard" contained in section 936 does not apply if the common law doctrine of strict liability "would apply," (§ 936) because the claim being asserted is a common law claim.  This reading is supported by the fact that there is no provision in the Act outlining a claim brought under the Act for which "strict liability would apply."  (§ 936.)  Moreover, such an interpretation of the sentence is supported textually by the reference to "claims," (§ 936) a term commonly used to refer to "causes of action."  (See, e.g., *Wallace v. County of Stanislaus* (2016) 245 Cal.App.4th 109, 122 [using the terms "causes of action" and "claims" interchangeably].)  As MWI argues in its brief, "the 'claims' described in the last sentence are synonymous with causes of action for strict products liability in tort."

Our interpretation of the final sentence of section 936 is also strongly supported by the similarity of that sentence to other provisions in the Act that clearly reflect the

16

Legislature's intent to limit the Act's effect on the *common law*. The Act repeatedly refers to common law claims—often within the final sentence of a section as in section 936—to state that the Act does not displace the common law in areas in which the Act does not apply. (See § 896 ["As to condominium conversions, this title does not apply to or does not supersede any other statutory or common law"]; § 941, subd. (e) ["Causes of action and damages to which this chapter does not apply are not limited by this section"]; § 945.5, subd. (h) ["As to any causes of action to which this statute does not apply, all applicable affirmative defenses are preserved"].) The final sentence of section 936 is most reasonably read as a similar such provision, i.e., one that makes clear that the common law is not affected by a particular statutory provision.[18]

Further, this interpretation is consistent with the basic structure of the statute. (See *Yohner*, *supra*, 237 Cal.App.4th at p. 8 [in interpreting an ambiguous statute courts may " ' " 'examine the context in which the language appears' " ' "].) *Section 896*, a provision outside of Chapter 4 of the statute, clearly sets forth a standard of liability applicable to *builders*. Section 896 also states that *nonbuilders* will be liable to the "*extent set forth in Chapter 4*." The first sentence of section 936, a provision in Chapter 4, sets forth a clear standard of liability applicable to a series of *nonbuilder*

_____

[18]    In other words, rather than leaving the effect of the Act's adoption of a negligence standard for statutory claims on the common law to implication, the final sentence of section 936 is reasonably interpreted as the Legislature's expression of its intent on this subject. (See 2B Sutherland Statutory Construction, § 50:5 (7th ed.) ["Where common law principles associated with a statute are not expressly affirmed or denied, the extent to which the common law is altered or changed is left to implication"].)

17

entities. Interpreting the final section of 936 as providing that the negligence standard applicable to *statutory* claims against nonbuilders under the Act does not apply to certain *common law* claims (i.e., those "claims for which strict liability would apply," § 936), is entirely consistent with the statute's specification of a standard of liability for *builders* in *section 896* (see § 896 ["In any action seeking recovery of damages arising out of, or related to [construction defects] . . . a *builder* . . . shall, except as specifically set forth in this title, be liable for, . . . [a] violation of[ ] the following standards" (italics added)]) and *nonbuilders* in *section 936*. (See § 896 [stating that a nonbuilder is liable under the Act "*to the extent set forth in Chapter 4 [in § 936]*" (italics added)].) In contrast, the HOA's construction of the statute, which it acknowledges "places a supplier 'on par,' with a builder under [the Act]," is entirely *inconsistent* with such text and structure.

### b. *The HOA's criticisms of this interpretation of the Act are unpersuasive*

The HOA contends that this interpretation of the Act, which MWI urged in the trial court, is flawed for several reasons. However, none of the HOA's contentions is persuasive. First, the HOA argues that the term "claim" in the final sentence is most reasonably read as "claim[ ] under SB800." While the HOA acknowledges that the term "claim" often "refers to a cause of action for damages," the HOA contends that the Act uses the term "claim" to refer to claims brought *pursuant* to the Act and the terms "action" or "causes of action," to refer to claims brought *outside* of the Act. However, the Act is not as consistent as the HOA suggests with respect to its use of

18

the terms "claim," "action," and "cause of action." For example, section 941 refers to an "*action*" when it is clear from context that the statute is referring to a claim brought *pursuant* to the Act. (See § 941, subd. (a) ["Except as specifically set forth in this title, no *action* may be brought to recover under this title" (italics added)].) In contrast, section 931 refers to "claim" and "claims" when it is clear that the statute is referring to a claims brought *outside* the Act. (See § 931 ["If a claim combines causes of action or damages *not* covered by this part, including, without limitation, personal injuries, class actions, other statutory remedies, or fraud-based *claims*," and referring to "any fraud-based *claim*," and "any class action *claims*" (italics added)].) Thus, the HOA's contention that we should interpret the term "claim" in section 936 to mean claim *brought pursuant to the Act* is not supported by the manner in which the Act uses the terms "claim," "action," and "cause of action." We decline to adopt an interpretation of the statute that requires us to insert words into the statute under the guise of interpretation. (See, e.g., *Kovacevic v. Avalon at Eagles' Crossing Homeowners Assn.* (2010) 189 Cal.App.4th 677, 685 [" ' "We may not insert words into a statute under the guise of interpretation [citation]" ' "].)

The HOA also maintains that interpreting "the last sentence of section 936 as referring to common law claims outside of [the Act] is . . . inconsistent with the rest of the . . . statute, in that *no other provisions comment on the preservation of common law construction defect claims*." (Italics added.) We disagree. As discussed above, the Act *repeatedly* refers to the preservation of common law construction defect claims. (See § 896 ["As to condominium conversions, this title does not apply to or does not

19

supersede any other statutory or common law"]; § 931 ["If a claim combines causes of action or damages not covered by this part, including, without limitation, personal injuries, class actions, other statutory remedies, or fraud-based claims"]; § 941, subd. (e) ["Causes of action and damages to which this chapter does not apply are not limited by this section"]; § 945.5, subd. (h) ["As to any causes of action to which this statute does not apply, all applicable affirmative defenses are preserved"].) Indeed, even another provision within section 936 specifies that the Act does not displace the common law. (See § 936 ["All actions by a claimant or builder to enforce an express contract, or any provision thereof, against a general contractor, subcontractor, material supplier, individual product manufacturer, or design professional is preserved"].) Thus, far from providing an interpretation of the final sentence that is inconsistent with other provisions in the Act, our interpretation fosters the "apparent intent of the Legislature" (*Yohner*, *supra*, 237 Cal.App.4th at p. 8) with respect to the manner by which the Act relates to the common law.

Citing sections 896 and 943, the HOA also argues that "a construction of section 936 as referring to common law strict liability claims outside of [the Act] makes no sense because under the clear language of the statute, *such construction defect claims do not exist outside of [the Act]*." (Italics added.) We disagree, for the following reasons.

Section 896 provides in relevant part that a "claimant's claims or causes of action shall be limited to violation of . . . the following standards . . . *except as specifically set forth in this title*." (Italics added.) Section 943, subd. (a) provides,

20

"[*e*]*xcept as provided in this title*, no other cause of action for a claim *covered by this title* or for damages recoverable under Section 944 is allowed." (Italics added.) The HOA notes that the California Supreme Court is currently considering whether, in light of sections 896 and 943, the Act provides the exclusive remedy for "*construction defect claims that are actionable under [the Act]*." (Italics added.) (See *McMillin Albany LLC v. Superior Court* (2015) 239 Cal.App.4th 1132, review granted Nov. 24, 2015, S229762 (*McMillin*).) The HOA argues that in deciding *McMillin,* the Supreme Court is likely to disapprove *Liberty Mutual Ins. Co. v. Brookfield Crystal Cove LLC* (2013) 219 Cal.App.4th 98, 102 (*Liberty Mutual*), in which the Court of Appeal held that, notwithstanding sections 896 and 943, the Act "does not eliminate a property owner's common law rights and remedies, otherwise recognized by law, where . . . actual damage has occurred."[19] (*Liberty Mutual*, at p. 101; but see *Elliott Homes, Inc. v. Superior Court* (2016) 6 Cal.App.5th 333, 345 (*Elliott*) [disagreeing with *Liberty Mutual* and stating, "The Act does not specifically except actions arising from actual damages"].)

Even assuming, strictly for the sake of argument, that the HOA is correct that the Act provides the exclusive remedy for construction defect claims that *are*

---

[19] The *Liberty Mutual* court reasoned that the Act "was enacted to provide remedies where construction defects have negatively affected the economic value of a home, although *no* actual property damage or personal injuries have occurred." (*Liberty Mutual*, *supra*, 219 Cal.App.4th at p. 101, italics added.) Thus, according to the *Liberty Mutual* court, where "actual damage *has* occurred," the Act does "not eliminate a property owner's common law rights and remedies." (*Ibid.*, italics added.)

21

actionable under the Act,[20] that would not mean that "strict liability . . . construction defect claims do not exist outside of [the Act]." That is because, as demonstrated by the italicized portions of sections 896 and 943 in the previous paragraph, the Act preserves, at a minimum, common law claims that are *not* actionable under the Act. Further, the Act expressly enumerates numerous claims related to construction defects that are *not* actionable under the Act. (See, e.g., § 931 [stating that cause of action for "personal injuries, class actions, other statutory remedies, or fraud-based claims," are "not covered" by the Act]; § 897 ["To the extent that a function or component of a structure is not addressed by these standards, it shall be actionable if it causes damage"]; accord *Elliot, supra*, 6 Cal.App.5th at p. 340 [noting that certain "claims [are] excepted from the Act," and citing §§ 896, 943, and 931].) In addition, there are *no* provisions in the Act that expressly preclude common law claims premised on the doctrine of strict liability.

In light of these provisions, it is clear that construction defect claims exist outside of the Act. For example, it is clear that the Act does not preclude common law strict liability construction defect claims based on products that cause personal injury. (§ 931.) It is also clear that the Act does not preclude common law strict liability construction defect claims based on products that are not addressed by the Act's standards, but that cause damage. (§ 897.)[21] Accordingly, we reject the HOA's

20    We emphasize that we express no opinion on the issue.
21    The Department of Housing and Community Development's enrolled bill report for SB800, which recommended that the Governor sign SB800, is fully consistent with

22

contention that interpreting the last sentence of section 936 as referring to common law claims "makes no sense" given the Act's purported preclusion of all common law strict liability construction defect claims.

####    c.  *The HOA's interpretation of the final sentence of 936 is not supported by the text or structure of the Act*

The HOA argues that in interpreting the last sentence of section 936, this court need not "look past the plain language of section 936," and offers the following interpretation of section 936:

> "A negligence standard applies to non-builders, according to the first sentence; however[,] that negligence standard does not apply to nonbuilders 'with respect to claims for which strict liability would apply,' [§ 936] according to the last sentence. The sentence simply means what it says. If the claim is one to which strict liability would apply at common law − e.g. a claim based on supplying a defective product − then the negligence standard does not apply to that claim under [the Act]."

We are not persuaded by the HOA's "plain language" argument. To begin with, the plain language of the last sentence of section 936 states only that the "*negligence standard* in this section does not apply." (Italics added.) The last sentence does not state that the *causation* or *breach of contract* provisions in the first sentence of section 936 do not apply. Thus, if the HOA's argument that the final sentence of section 936

the plain language of the statute with respect to this issue. (Department of Housing and Community Development, Enrolled Bill Rep. on Sen. Bill No. 800 (2001-2002 Reg. Sess.) Aug. 13, 2002, p. 5.) [stating that SB800 "[p]rovide[s] that any defect not listed in this bill *shall be actionable in tort* only if it causes actual property or bodily damage" (italics added)].) We may rely on this report in interpreting the statute. (See *Elsner v. Uveges* (2004) 34 Cal.4th 915, 934, fn. 19 [the California Supreme Court has "routinely found enrolled bill reports, prepared by a responsible agency contemporaneous with passage and before signing, instructive on matters of legislative intent"].)

qualifies the standard of liability to be applied to claims brought against nonbuilders pursuant to the Act were correct, applying the plain language of the final sentence of section 936 would not, as the HOA suggests, mean that a material supplier's liability would be " 'on par' " with a builder's liability under section 896.

Rather, since the last sentence of section 936 states that the "*negligence standard* in this section does not apply," (§ 936, italics added) a homeowner would be required to establish that a nonbuilder *caused* a violation of a standard as a result of a *breach of contract*. That is because, if the term "negligence standard" of section 936 were removed from the statute, the plain language of the first sentence of section 936 would read, "Each and every provision of the other chapters of this title apply to [nonbuilders] to the extent that the [nonbuilders] caused, in whole or in part, a violation of a particular standard as the result of . . . a breach of contract."[22]

We can conceive of no public policy reason why the Legislature would have intended that the statute be interpreted in such a fashion. More specifically, it would be absurd to think that the Legislature intended that claims that would have been strict liability *tort* claims at common law be actionable under the Act only if caused by a *breach of contract*.[23] Thus, we are unpersuaded by the HOA's argument that the "plain language" of the final sentence of section 936 demonstrates that the final

---

[22]    The HOA recognized as much in its brief opposing MWI's motion for JNOV in the trial court, arguing, "It may be noted that the last sentence of . . . [section] 936 only states that the '*negligence standard* in this section does not apply.' It does not refer to the alternative breach of contract requirement."

[23]    In the trial court, the HOA acknowledged that it would be " 'absurd' " to interpret the statute in such a fashion.

24

sentence of section 936 qualifies the standard of liability outlined in the first. (See *John v. Superior Court* (2016) 63 Cal.4th 91, 96 [statutes are to be interpreted so as to avoid absurd results].)

In the trial court, the HOA argued that the phrase " '*negligence standard* in this section' " (italics added) in the last sentence of section 936 "is referring to the entire additional negligence/*breach of contract* requirement, discussed in the first sentence." (Italics added.) The HOA does not offer this argument, which is entirely inconsistent with the plain language of section 936, on appeal. Given that the text of the final sentence of section 936 does not refer to a "breach of contract," (§ 936) the statute's text does not support the conclusion that the Legislature intended that the statute remove the entire "negligence/breach of contract requirement" contained in the first sentence for claims brought under the Act against nonbuilders. Nor does the text of the Act evince the Legislature's intent to "place[ ] a [material] supplier 'on par' with a builder," since a builder's liability is specified under *section 896*. Instead, section 896 states that a nonbuilder is liable under the Act "to the extent set forth in Chapter 4," (§ 896) and there is no provision outside of the first sentence in section 936 in Chapter 4 that outlines the standard of liability applicable to claims against nonbuilders under the Act.

In addition, to interpret the statute in the manner that the HOA suggests would mean that the standard of liability for a claim brought *pursuant* to the Act would be determined by the standard of liability that would have applied if the claim had been brought *at common law*. Or, as the HOA argues in its brief, "[The Legislature] wrote

25

that the negligence standard does not apply to 'claims for which strict liability ***would***

***apply***' − meaning *SB800 claims* to which strict liability 'would apply' *outside of*

*SB800.*" (Quoting § 936, first emphasis added in the HOA's brief.) The HOA presents

no argument as to why the Legislature would have wanted the standard for statutory

liability *under* the Act to turn on the conceptually difficult question of how a claim

might be characterized if brought at *common law*.

For example, the HOA asserts in its brief that all common law claims based on

a defendant's supply of a defective product are based on *strict liability*.[24] However,

that is not the case. A claim based on a defective product may be brought at common

law under either a *negligence* theory or a *strict liability* theory. (See, e.g., *Johnson v.*

*United States Steel Corp.* (2015) 240 Cal.App.4th 22, 30-31 [" ' "Products liability is

the name currently given to the area of the law involving the liability of those who

supply goods or products for the use of others to purchasers, users, and bystanders for

losses of various kinds resulting from so-called defects in those products." '

[Citations.] One may seek recovery in a products liability case on theories of *both*

*negligence and strict liability*" (italics added)]; *Brady v. Calsol, Inc.* (2015) 241

Cal.App.4th 1212, 1218 ["A products liability case may rest on either a theory of strict

liability or negligence. . . . In asserting a claim for negligence, the plaintiff must prove

the defect in the product was due to the defendant's negligence"].) Thus, determining

whether a claim brought *under* the Act would have been one for which *strict liability*

---

24 The HOA argues, "If the claim is one to which strict liability would apply at common law − e.g. a claim based on supplying a defective product."

26

would have applied if the claim had been brought at *common law*, would not be as simple as determining whether the claim was "based on supplying a defective product," as the HOA suggests.

In addition, while the HOA argues that the Act should be interpreted to provide that a claim pursuant to the Act against a material supplier premised on a defective product should be governed by the same standard of liability as applies to a builder under section 896, a common law claim for strict products liability has elements not present in a statutory claim *under section 896*, namely, a defective product and resulting damage other than economic loss.[25]  (See *Jimenez*, *supra*, 29 Cal.4th at p. 484.)  The HOA fails to explain why the Legislature would have wanted to subject material suppliers to statutory liability without requiring proof of these elements merely because a plaintiff could *allege* a common law *strict liability* claim against the supplier.  Moreover, this case shows the difficulties of applying such an interpretation of the Act in determining the standard of proof to be applied at trial to a party's claims. As noted in part I, *ante*, the HOA *abandoned* its strict liability claim on the eve of trial. Under these circumstances, it is far from clear that the HOA's statutory claim *under the Act* can be fairly characterized as being a claim "for which strict liability would

---

[25]  "Damages available under strict products liability do not include economic loss, which includes ' " 'damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits—without any claim of personal injury or damages to other property.' " ' "  (*Jimenez*, *supra*, 29 Cal.4th at p. 482.)  The unavailability of such damages is commonly referred to as the "economic loss rule." (See *Greystone*, *supra*, 168 Cal.App.4th at p. 1202.)

27

apply" (§ 936) at *common law*, even assuming that we agreed with the HOA's interpretation of the statute.

> d. *The legislative history*

The Act's legislative history fully supports our interpretation of the Act. Section 936 was initially adopted as part of the original enactment of the Act through Senate Bill No. 800 in 2002. The first sentence of section 936 in the original enactment is identical in all material respects to the current version of the statute. (See Stats. 2002, ch. 722, § 3 ["Each and every provision of the other chapters of this title apply to subcontractors, material suppliers, individual product manufacturers, and design professionals to the extent that the subcontractors, material suppliers, individual product manufacturers, and design professionals caused, in whole or in part, a violation of a particular standard as the result of a negligent act or omission or a breach of contract"].) However, as initially adopted in 2002, the final sentence of section 936 stated, "However, *this section* does not apply to any subcontractor, material supplier, individual product manufacturer, or design professional *to which* strict liability would apply." (Stats. 2002, ch. 722, § 3, italics added.)

Although, as both MWI and the HOA agree, the plain language of the final sentence of section 936 as originally adopted could be read, as the HOA states, to "completely exempt[ ] nonbuilders [such as material suppliers] from section 936 . . .

28

whenever strict liability would apply,"[26] the legislative history of Senate Bill No. 800 supports the conclusion that the Legislature intended for the standard of liability specified in the first sentence of section 936 to apply to claims brought pursuant to the Act against nonbuilders such as material suppliers. (See, e.g., Sen. Com. on Judiciary, Rep. on Sen. Bill No. 800, (2001-2002 Reg. Sess.) as amended Aug. 28, 2002, p. 4 ["the standards are intended to apply to . . . material suppliers . . . to the extent that they cause, in whole or in part, a violation of a particular standard as a result of their negligent acts or omissions, or breach of contract"].) In contrast, we have located *nothing* in the legislative history that would support the conclusion that the Legislature intended to entirely exempt material suppliers, or any other nonbuilders, from statutory liability under section 936 whenever "strict liability would apply." (§ 936.) Such an exemption would have been extremely significant because it would have had the effect of exempting nonbuilder entities from *any* liability to claimants under the Act whenever "strict liability would apply," because there were (and are) no *other* provisions in the Act defining the liability of such entities. The absence of any mention of such an exemption suggests that the Legislature did not intend for the final sentence to exempt nonbuilders from liability under section 936 whenever "strict liability would apply." (§ 936.)

---

[26]   Discussing the final sentence of the initial version of section 936, MWI argues, "Read literally, this language effectively excluded a whole class of nonbuilders from potential liability under SB 800, i.e., those like MWI that were subject to the usual rules of strict liability in tort for distributing products that were defective in design or manufacture."

In 2003, the Legislature amended the final sentence of section 936 to its present form. (Stats. 2003, ch. 762, § 5, p. 5732.) The statute amended the last sentence of section 936 in relevant part as follows, "However, *the negligence standard in* this section does not apply to any . . . material supplier ~~to~~ *with respect to claims for* which strict liability would apply." (Stats. 2003, ch. 762, § 5, p. 5732 [showing additions to the statute in italics and deletions in strikethrough, italics added].) Numerous legislative committee reports support the conclusion that the Legislature viewed the 2003 amendments to the Act as "technical cleanup" of the original statute adopting the Act the previous year. (Sen. Rules Com., Off of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 903 (2003-2004 Reg. Sess.) as amended Sep. 4, 2003, p. 2.)

The HOA argues that "the [L]egislature's 2003 amendment of Section 936 to clarify removing [*sic*] the negligence standard for manufacturers and suppliers (and any strictly liable defendant) may well have been a response to *Jimenez*[, *supra*, 29 Cal.4th at 473]." In *Jimenez*, the California Supreme Court concluded that, under the common law, product manufacturers may be held strictly liable in tort for construction defects that cause physical damage to other parts of a house. (*Jimenez*, *supra*, 29 Cal.4th at p. 476.)[27] Stated differently, the HOA argues that the Legislature "may" have been motivated by the *Jimenez* decision to amend section 936 so as to "place[ ] a

---

[27] *Jimenez*, which involved windows in housing developments completed prior to the Act's adoption, did not involve a claim under the Act. (See *Jimenez*, *supra*, 29 Cal.4th at p. 483, fn. 2 [citing the Act and noting that the Legislature has "established a limited new cause of action for certain specified housing defects"].)

[material] supplier 'on par' with a builder," under the Act. The HOA's argument is unpersuasive.

To begin with, the HOA fails to explain why the Legislature would intend to make material suppliers liable under the Act for a violation of the Act's standards *irrespective* of whether they supplied a defective product that resulted in damage other than economic loss merely because the *Jimenez* court concluded that a manufacturer may be liable where these elements are proven through a common law claim (*Jimenez*, *supra*, 29 Cal.4th at p. 476). The HOA's interpretation of the amendments is also directly contrary to our discussion of the Act and *Jimenez* in *Greystone*. (See *Greystone*, *supra*, 168 Cal.App.4th at p. 1216, fn. 14 ["The Legislature's decision *not* to apply a strict liability standard[28] to product manufacturers is consistent with the holdings [of two cases disapproved in *Jimenez*]. The common law has expanded the liability of product manufacturers in this regard, albeit subject to the economic loss rule, *beyond that* provided in section 936" (italics added)].)

Moreover, there is *nothing* in the legislative history of the 2003 amendments that would support the HOA's speculation that the Legislature intended such a

---

28    As MWI points out in its brief, to avoid confusion with the *common law* of *strict* liability, it may have been preferable for the *Greystone* court to have stated that, in section 936, the Legislature decided not to apply to product manufacturers the form of " 'absolute' " statutory liability that the Legislature specified in section 896 as applicable to claims against builders. However, the point that the *Greystone* court was making is clear—the Legislature adopted a fault based standard of liability for product manufacturers under the Act, notwithstanding that the common law provided for the liability of product manufacturers without fault, albeit subject to the limitations of the economic loss rule. (See *Greystone*, *supra*, 168 Cal.App.4th at p. 1216, fn.14.)

31

significant substantive change in the Act by way of the 2003 amendments. Such a change would have been entirely incompatible with the Legislature's characterization of the amendments as constituting a "technical cleanup." (Sen. Rules Com., Off of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 903 (2003-2004 Reg. Sess.) as amended Sep. 4, 2003, p. 2.)

Further, the sponsor of Assembly Bill No. 903, Assembly member Darrell S. Steinberg, sent a letter to Governor Gray Davis urging the signing of the bill, in which he described the legislation as a "non-controversial bill" that made "various technical changes," including "*[c]larify[ing] that SB 800 did not change the law regarding . . . strict liability*." (Italics added.) (Assembly member Darrell S. Steinberg, letter to Governor Gray Davis, Sept. 16, 2003.)[29] The Steinberg letter is entirely consistent with our interpretation of the final sentence of 936 as evincing the Legislature's intent that the negligence standard specified in the first sentence of section 936 does not apply to common law strict liability claims against material suppliers. Thus, we reject the HOA's suggestion that the Legislature amended the Act in 2003 with the intention of "plac[ing] a [material] supplier 'on par' with a builder."

---

[29] The letter also states, "The provisions of AB 903 were suggested by building industry representatives, the consumer attorneys, legislative counsel, and Assembly and Senate staff familiar with SB 800. All of the changes are non-controversial, consensus changes." (Assembly member Darrell S. Steinberg, letter to Governor Gray Davis, Sept. 16, 2003.) The letter may be considered in ascertaining legislative intent since it reflects " 'a reiteration of legislative discussion and events leading to adoption of proposed amendments rather than merely an expression of personal opinion.' " (*Martin v. Szeto* (2004) 32 Cal.4th 445, 450-451.)

e. *Greystone*

In light of the text, structure, and legislative history of the Act discussed above, we adhere to our conclusion in *Greystone* that a nonbuilder entity is liable under the Act "only where its 'negligent act or omission or a breach of contract' . . . caused a violation of the Act's standards." (*Greystone*, *supra,* 168 Cal.App.4th at p. 1216, italics omitted.) In *Greystone*, in reversing a summary judgment in favor of a product manufacturer, this court considered, among other issues, whether the common law economic loss rule[30] precluded a builder from seeking equitable indemnification under the Act from a jointly liable product manufacturer for the cost of repairing damage caused by the manufacturer's violation of the Act's standards. (*Id.* at pp. 1213-1220.) We explained that in determining this issue, we first were required to address whether the economic loss rule would preclude a *homeowner* from collecting such damages in an action against the product manufacturer, since the builder's ability to pursue an indemnity action against the manufacturer was contingent on the manufacturer and the builder sharing a joint legal obligation to the homeowners. (*Id.* at p. 1213.) After citing sections 896 and 936, we concluded, "a homeowner may recover economic losses from a product manufacturer[31] for a violation of the Act's standards that is *caused by the manufacturer's negligence or breach of contract*." (*Greystone*, at pp. 1213-1214, italics added.)

---

30      See footnote 25 for a definition of the economic loss rule.

31      As noted previously (see pt. I, *ante*), product manufacturers and material suppliers are treated identically with respect to this issue under the Act.

The *Greystone* court also rejected the manufacturer's argument that section 936's reference to the preservation of "common law . . . defenses," (italics added) permitted the manufacturer to defeat the builder's claim by assertion of the economic loss doctrine.[32] (*Greystone*, *supra*, 168 Cal.App.4th at pp. 1214-1215.) In rejecting this argument, we stated:

> "A more reasonable interpretation of section 936 [i.e., one that excluded the economic loss doctrine as a defense that could be asserted in an action premised on section 936] follows from the fact that, while under sections 896 and 942 a builder is strictly liable[33] for any violation of the Act's standards, pursuant to the first sentence of section 936, *a product manufacturer is liable only where its 'negligent act or omission or a breach of contract' . . . , caused a violation of the Act's standards*. The reference to 'common law and contractual defenses,' in the second sentence of section 936 parallels the scope of duty articulated in the first sentence of the section. Thus, for example, in a suit premised on a manufacturer's negligent act or omission, the manufacturer may assert traditional common law defenses to negligence actions, such as comparative negligence and primary assumption of risk, to the extent that such defenses are 'applicable' (§ 936) to the plaintiff's claim." (*Greystone*, *supra*, at p. 1216, italics altered, footnotes omitted.)

We also relied on the "Act's explicit adoption of a negligence standard for claims against product manufacturers," (*Greystone*, *supra*, 168 Cal.App.4th at p. 1216,

---

[32]    The *Greystone* court noted that the product manufacturer was relying on the second sentence of section 936, which states in relevant part, " 'In addition to the affirmative defenses set forth in Section 945.5, a[n] . . . individual product manufacturer . . . may also offer common law and contractual defenses as applicable to any claimed violation of a standard.' " (*Greystone*, *supra*, 168 Cal.App.4th at p. 1215, italics omitted, quoting § 936.)

[33]    As discussed in footnote 28, to avoid confusion with the *common law* of strict liability, it may be preferable to refer to a builder's *statutory* liability under the Act as a form of " 'absolute' " liability rather than stating that a builder is "strictly liable" for a violation of the Act's standards. (*Greystone*, *supra*, 168 Cal.App.4th at p. 1216.)

fn. 14) in rejecting the manufacturer's argument that concluding that the economic loss rule did not bar the builder's indemnity claim "would 'expand the law of strict product liability beyond tolerable limits.' " (*Ibid.*)  Ultimately, "[w]e conclude[d] that the . . . Act abrogates the economic loss rule in actions brought by homeowners against individual product manufacturers for a violation of the Act's standards *based upon the manufacturer's negligence or breach of contract*." (*Id.* at p. 1217, italics added.)

Despite the fact that the *Greystone* court, on no fewer than four occasions, articulated the standard of liability to be applied to a claim against a nonbuilder brought under the Act (i.e., one premised on a negligence or a breach of contract) (*Greystone*, *supra*, 168 Cal.App.4th at pp. 1213-1214, 1216, 1216, fn. 14, 1217),[34] the HOA contends that *Greystone* is "not authoritative or even applicable here."  In support of this contention, the HOA argues that "*Greystone* was a[n] equitable indemnity action by a developer[35] against its supplier, not a claim by an SB800 'claimant'."  This argument is entirely unpersuasive because, as the *Greystone* court explained, whether the builder could assert an indemnity action against the nonbuilder turned in the first instance on whether a *homeowner/claimant*[36] could state such a

---

[34]    On one of these occasions, the *Greystone* court referred to the standard as a "negligence standard" (*Greystone*, *supra*, 168 Cal.App.4th at p. 1216, fn. 14) rather than one premised on negligence *or breach of contract* because the court was contrasting the *tort* doctrines of strict liability and negligence.  (*Ibid.*)

[35]    The plaintiff in *Greystone* was described as a "builder" (*Greystone*, *supra*, 168 Cal.App.4th at p. 1207), rather than a developer.

[36]    As noted previously (see fn. 16, *ante*), the Act uses the term "claimant" and "homeowner" interchangeably.  (§ 895, subd. (f).)

claim (*Greystone*, at p. 1213), and the *Greystone* court expressly described the standard of liability applicable to a claim by a "*homeowner.*" (*Ibid.*, italics added.)

The HOA also contends that "*Greystone*'s comment on the negligence standard in section 936 is dictum, and was not integral to the decision." "Statements by appellate courts 'responsive to the issues raised on appeal and . . . intended to guide the parties and the trial court in resolving the matter following . . . remand' are not dicta." (*Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1158-1559 (*Sonic-Calabasas*).) Our statements in *Greystone* on this issue were clearly responsive to the issues presented on appeal,[37] and were intended to guide the proceedings on remand in light of our reversal of a summary judgment. The statements were not dicta. (See *Sonic-Calabasas*, at pp. 1158-1159.)

Finally, while the *Greystone* court quoted the entirety of section 936, including the final sentence on which the HOA bases its argument (*Greystone*, *supra*, 168 Cal.App.4th at pp. 1211-1212.), the HOA is correct to note that the *Greystone* court did not discuss the final sentence of section 936. However, for the reasons stated above, an analysis of the final sentence, together with the remaining provisions of the Act, reinforces the correctness of our conclusion in *Greystone* that a nonbuilder entity is liable under the Act "only where its 'negligent act or omission or a breach of

---

[37] The HOA acknowledges as much, noting that the *Greystone* court discussed the standard of liability applicable to nonbuilders under the Act in response to an argument raised by the product manufacturer.

contract' . . . caused a violation of the Act's standards." (*Greystone*, at p. 1216, quoting § 936, italics omitted.)

C. *There is no evidence in the record that MWI caused, in whole or in part, a violation of a standard in the Act as the result of its negligent act or omission or a breach of contract*

In light of our interpretation of the Act provided in part III.B, *ante*, we must consider whether there is sufficient evidence in the record to support a verdict that MWI caused, in whole or in part, a violation of a standard in the Act as the result of its negligent act or omission or a breach of contract. (See pt. III.A, *ante* [outlining standard of review applicable to the review of order denying motion for a directed verdict and order denying motion for JNOV].)

We begin by observing that, until this court's request for supplemental briefing on this issue,[38] it appeared to be undisputed that the record lacked such evidence. MWI repeatedly argued in the trial court that the Act required that the HOA prove that MWI caused, in whole or in part, a violation of a standard in the Act as the result of its negligent act or omission or a breach of contract. MWI raised this argument in a jury instruction conference, in its motion for a directed verdict, and in its motion for JNOV. In responding to MWI's contentions, the HOA never argued in the trial court that it had presented sufficient evidence under this interpretation of the Act. Instead, the

---

[38]  Our request for supplemental briefing stated in relevant part, "If this court were to agree with [MWI] that [section 936] requires [the HOA] to have established that MWI's 'negligent act' 'caused, in whole or in part, a violation of a particular standard' (§ 936) in order to prevail on the first cause of action in its third amended complaint styled 'Violation of SB800 Construction Standards, Civil Code § 896,' what is the proper disposition of this appeal?"

37

HOA argued only that the Act did not require it to present such evidence.[39]  The jury was not instructed that the HOA was required to prove that MWI's negligence or breach of contract caused a violation of the Act's standards and the jury did not render any findings on these issues.

At the hearing on the motion for JNOV, MWI's counsel argued that in *Greystone*, this court outlined the applicable standard of proof and that the HOA's "proof failed."  MWI's counsel stated that there was thus no reason to revisit MWI's statutory interpretation argument with respect to its new trial motion.  The trial court responded, "If you're right, the JNOV is granted and you never get to the new trial.  I agree with that."

In its opening brief in this court, after presenting its statutory interpretation argument, MWI argued that the trial court erred in denying its motion for a directed verdict and motion for JNOV due to the HOA's failure of proof.  In its respondent's brief, the HOA offered only the statutory interpretation argument that we have rejected in part III.B, *ante*, and presented no argument that the record contained the evidence of a negligent act or omission or breach of contract by MWI that MWI argued is required.

---

[39]     The HOA did not file an opposition to MWI's motion for a directed verdict and the trial court denied the motion without the HOA's counsel presenting oral argument.

However, in its supplemental brief, the HOA contends that the record *does* contain sufficient evidence to support the verdict.  We consider each of the HOA's arguments pertaining to this issue.[40]

The HOA argues that "the record . . . supports a strong inference of a 'negligent act or omission' by MWI."

" ' "Negligence is either the omission of a person to do something which an ordinarily prudent person would have done under given circumstances or the doing of something which an ordinarily prudent person would not have done under such circumstances.  It is not absolute or to be measured in all cases in accordance with some precise standard but always relates to some circumstance of time, place and person." ' "  (*Minnegren v. Nozar* (2016) 4 Cal.App.5th 500, 507, boldface omitted.)  Or, stated similarly, " 'Negligence is the failure to use reasonable care to prevent harm to oneself or to others.  [¶]  A person can be negligent by acting or by failing to act.  A person is negligent if he or she does something that a reasonably careful person would not do in the same situation or fails to do something that a reasonably careful person would do in the same situation.' "  (*Ibid.*, quoting CACI No. 401.)

_____

40      The HOA presented these arguments in their most complete form in arguing that any error committed by the trial court on this issue was harmless.  The HOA then incorporated those arguments in addressing whether there is "evidence in the record that the SB800 violations were caused by 'a negligent act or omission or breach of contract' by MWI."  Accordingly, in order to fully address the HOA's contentions, we consider the arguments presented by the HOA in that section of its supplemental brief entitled, "Any Trial Court Error in Not Requiring a 'Negligent Act' Under Section 936 Was A Harmless Error."  (Boldface & underscore omitted.)

The HOA offers two arguments in support of its contention that the record contains evidence of MWI's negligent acts or omissions sufficient to support the verdict. First, the HOA cites evidence supporting a finding that the pipes supplied by MWI leaked and that the pipes contained "manufacturing . . . defects."[41] The HOA maintains that "[d]rain pipes do not leak their contents into the walls of a structure within a few years of construction in the absence of negligence." Even assuming that the record would support a finding that the *manufacturer* of the pipes was negligent, the question we must determine is whether there is evidence that *MWI*, a *supplier* of the pipes, was negligent. On this question, the HOA does not identify any evidence that MWI failed to supply the type of pipe that was ordered, acted unreasonably in failing to detect any manufacturing defects present in the pipe, or damaged the pipe in transporting it. In sum, the HOA makes no persuasive argument that the record contains evidence that MWI's *negligence* as a *supplier* was responsible for the

---

[41] After we issued our request for supplemental briefing, the HOA filed a motion to augment the record with exhibits offered in evidence at trial consisting of photographs of the pipes. (See Cal. Rules of Court, rule 8.155.) In the alternative, the HOA requested that this court grant permission to allow a late transmission of exhibits to this court on the ground that the exhibits became relevant upon our request for supplemental briefing. (See Cal. Rules of Court, rule 8.224(d).)

Since the exhibits were offered in evidence at trial, they are already part of the record on appeal, and there is no need to augment the record to include them. (Cal. Rules of Court, rule 8.124(b)(4) ["All exhibits admitted in evidence, refused, or lodged are deemed part of the record, whether or not the appendix contains copies of them"].) However, we grant the HOA's request for a late transmittal of exhibits in light of our supplemental briefing request. Accordingly, we deny the HOA's request that we augment the record with pages 1 through 21 attached to its motion to augment, but grant the HOA's alternative request for transmittal of the exhibits to this court.

40

"*manufacturing* . . . defects" that the HOA refers to in its supplemental brief.[42] (Italics added.)

The only other *evidence*[43] in the record that the HOA cites in support of its contention that *MWI* was negligent is the testimony of John Morally, MWI's founder. The HOA notes that Morally testified that in 1998 or 1999, he traveled to China and went to a foundry where the type of pipe used in the project (Wanze pipe) was manufactured, and that in 2002, MWI began importing Wanze pipe into the United States. This testimony clearly is not sufficient to support a finding that MWI "caused, in whole or in part, a violation of a particular standard as the result of a negligent act or omission." (§ 936.) Accordingly, we reject the HOA's contention that there is sufficient evidence in the record to support a verdict that MWI caused, in whole or in part, a violation of a standard in the Act as the result of its negligence.

---

[42]    Noting that the jury did not ascribe any responsibility to the pipe installer or to the HOA for the HOA's damages, the HOA contends that "[t]he jury's fault findings establish that no party other than MWI can have responsibility for that negligence, satisfying any negligence requirement under Section 936." We disagree that the jury's *findings* constitute *evidence* of MWI's negligence as a supplier of the pipes, particularly since the *manufacturer* of the pipes was not a defendant in the case.

[43]    The HOA also cites MWI's counsel's *statements* to the court, *outside the presence of the jury*, concerning MWI's efforts in obtaining the necessary certification to sell the type of pipe used in the project in the United States. Such statements clearly do not constitute *evidence* that may be relied upon to support the verdict. (See *In re Zeth S.* (2003) 31 Cal.4th 396, 414, fn. 11 ["It is axiomatic that the unsworn statements of counsel are not evidence"].) We also grant MWI's motion to augment the record with the *HOA's* motion in limine to *exclude* evidence of MWI's certification efforts and MWI's opposition to such motion. The trial court granted the HOA's motion and thus, the jury did not hear the evidence. Under these circumstances, the HOA's attempted reliance on MWI's counsel's statements to support the verdict is clearly unfair, since it was the *HOA* that successfully precluded the jury from considering this evidence.

The HOA also contends that "[t]he record supports [a finding] that the SB800 violation was caused, at least in part, by MWI's breach of a contract – namely its express and implied warranties."  With respect to the HOA's implied warranty theory, the HOA contends that MWI breached the implied warranty of fitness under California Commercial Code section 2314, subdivision (2)(c).  The HOA never presented this theory of liability in the trial court or in its initial briefing on appeal.  "[N]ew theories of liability, may not be asserted for the first time on appeal."  (*Bardis v. Oates* (2004) 119 Cal.App.4th 1, 13-14, fn. 6.)  Further, in its supplemental brief, the HOA fails to outline the elements of such a claim or to demonstrate how the evidence presented at trial was sufficient to prove each element.  (See CACI No. 1231 ["Implied Warranty of Merchantability - Essential Factual Elements," listing six elements, including that the goods "w[ere] not fit for the ordinary purposes for which such goods are used"].)  Under these circumstances, we conclude that the HOA has not demonstrated that the record contains sufficient evidence to support the judgment on a theory that was never presented in the trial court.  (See *Brandwein v. Butler* (2013) 218 Cal.App.4th 1485, 1519 [" 'Bait and switch on appeal not only subjects the parties to avoidable expense, but also wreaks havoc on a judicial system too burdened to retry cases on theories that could have been raised earlier' "]; *14859 Moorpark Homeowner's Assn. v. VRT Corp.* (1998) 63 Cal.App.4th 1396, 1403 [applying theory of case doctrine to preclude respondent from asserting theory raised "[f]or the first time on appeal and in a cursory fashion"].)

42

The HOA's express warranty theory fails for an even more fundamental reason. The HOA bases its express warranty argument on a warranty that MWI purportedly gave to Sherwood Mechanical, MWI's customer for the pipes used in the project. The HOA filed a motion in this court to augment the record with the warranty. (See Cal. Rules of Court, rule 8.155 [stating that a "reviewing court may order the record augmented to include," (*id.* at (a)(1)), "[a]ny document filed or lodged in the case in superior court," (*id.* at (a)(1)(A))].) *However, as the HOA concedes in a declaration offered by its counsel in support of its motion, the warranty was "not admitted into evidence."* (Italics added.) Thus, even assuming that the warranty was "*lodged* with the court for trial," (italics added) as the HOA's counsel represents in his declaration,[44] because the warranty was concededly "*not admitted into evidence*," (italics added) it clearly does not constitute "substantial evidence," upon which the verdict may be supported. (*Trujillo*, *supra*, 63 Cal.App.4th at p. 284.)[45]

---

[44]     Aside from counsel's declaration, the HOA does not cite to anything in the record demonstrating that this exhibit was ever even *lodged* with the trial court.

[45]     Assuming that the warranty *was* lodged as an exhibit in the trial court, it is deemed part of the record (See Cal. Rules of Court, rule 8.124(b)(4)) and augmentation is unnecessary. However, as discussed in the text, even assuming that the warranty is in the *record*, it is clear that because the warranty was not offered in *evidence*, it may not be relied upon to support the verdict. Accordingly, we deny the HOA's motion to augment insofar as it seeks to augment the record with the warranty.

In light of our conclusion that the warranty may not be used to support the verdict, we also deny the HOA's request to augment the record with an excerpt of Morally's deposition, which was not offered as evidence at trial nor lodged in the trial court, which the HOA seeks to offer "as foundation for the written warranty having been issued to the plumbing installer at the subject Acqua Vista project."

We also deny the HOA's requests that we augment the record with a "pre-marked trial exhibit . . . an [i]nvoice," and a "[p]urchase [o]rder . . . which was

Accordingly, we reject the HOA's contention that the record contains evidence to support the verdict on the ground that MWI breached an express or implied warranty.[46]

Finally, the HOA argues that it presented sufficient evidence to establish MWI's liability under a "common law strict products liability standard." (Formatting omitted.) Even assuming, strictly for the sake of argument, that this is so (notwithstanding that the HOA indicated on the eve of trial that it was *not* pursuing a common law strict liability claim),[47] we need not decide whether the HOA presented evidence sufficient to demonstrate the elements of a common law claim premised on

admitted into evidence," in order to show the date of delivery of the pipe for purposes of determining the applicability of the warranty. Neither document has any relevance to the issues on appeal, given that the warranty was not offered in evidence. Further, the HOA fails to demonstrate that the invoice was ever lodged in the trial court and that it is therefore a proper subject for augmentation (Cal. Rules of Court, rule 8.155), and the purchase order is already part of record since, according to the HOA, it was admitted in evidence (Cal. Rules of Court, rule 8.124(b)(4)). Thus, we deny the HOA's request to augment the record with pages 22 through 37 of the documents attached to its motion to augment.

[46] In its opposition to the HOA's motion to augment, MWI raises a series of "questions of statutory interpretation," that it contends this court would have to address before concluding that a warranty constitutes sufficient evidence to support the verdict. Among these questions are the "HOA's standing to assert a warranty violation for the purpose of . . . section 936," since MWI allegedly gave the warranty to Sherwood Mechanical, and not to the HOA. In light of our conclusion in the text, we need not address these issues.

[47] During a pretrial hearing, the court stated, "So there are two causes of action that are being pursued: SB 800 [i.e. one under the Act] and strict liability?" The HOA's counsel responded, "Actually, Your Honor, we've discussed it, and I think we're prepared to forego the strict liability and just pursue the case under [section] 896[, subdivision] (a)(14) and (15)." The HOA's counsel then clarified that, in light of the HOA's decision not to pursue a cause of action premised on the doctrine of strict liability, the court would not be required to address various legal issues that arise during the litigation of such a claim.

the doctrine of *strict liability*. It is axiomatic that "[t]he doctrine of strict liability imposes legal responsibility, *without* proof of negligence." (*Carlin v. Superior Court* (1996) 13 Cal.4th 1104, 1149, italics added.) Thus, even assuming that the HOA were correct that it presented evidence that would "support the verdict and judgment under a common law strict product liability theory,"[48] such evidence would not support the verdict and judgment in this case,[49] since we have concluded that the Act required the HOA to prove that MWI "caused, in whole or in part, a violation of a particular standard as the result of a *negligent act or omission or a breach of contract*." (§ 936, italics added.)

Accordingly, we conclude that there is not sufficient evidence in the record to support a finding that MWI caused, in whole or in part, a violation of a standard in the Act as the result of its negligent act or omission or a breach of contract.[50]

---

[48] We emphasize that we express no opinion on whether the evidence in the record would be sufficient to support a verdict on a common law claim premised on the doctrine of strict liability.

[49] As outlined in footnote 47, *ante*, the record is clear that the only claim that the HOA brought was a claim under the Act and the HOA indicated that it was not pursuing a common law strict liability claim. Since MWI did not defend against a common law claim premised on the doctrine of strict liability, the jury was not instructed on such a claim, and the jury did not render any findings on such a claim, we reject the HOA's argument that "[a]ny trial court error is . . . harmless because MWI's liability *could* have been established applying a strict products liability theory to the same . . . facts." (Italics added.)

[50] In light of our conclusion that there is *no evidence* in the record that MWI caused, in whole or in part, a violation of a standard in the Act as the result of its negligent act or omission or a breach of contract, we necessarily reject the HOA's argument raised in its supplemental letter brief that any error committed by the trial court in failing to instruct the jury on this issue was *harmless*.

D. *The judgment must be reversed and the matter remanded to the trial court with directions to grant MWI's' motion for a directed verdict and to enter judgment in favor of MWI*

In *Frank v. County of Los Angeles* (2007) 149 Cal.App.4th 805 (*Frank*), the court discussed the proper disposition for an appellate court to direct in case in which a reversal is "based on insufficiency of the evidence." (*Id.* at p. 833.) The *Frank* court stated:

> " ' "When the plaintiff has had full and fair opportunity to present the case, and the evidence is insufficient as a matter of law to support plaintiff's cause of action, a judgment for defendant is required and no new trial is ordinarily allowed, save for newly discovered evidence. . . . Certainly, where the plaintiff's evidence is insufficient as a matter of law to support a judgment for plaintiff, a reversal with directions to enter judgment for the defendant is proper. . . . [¶] . . . [A] reversal of a judgment for the plaintiff based on insufficiency of the evidence should place the parties, at most, in the position they were in after all the evidence was in and both sides had rested." ' " (*Id.* at pp. 833-834; accord Code Civ. Proc., § 629, subd. (c) ["If the motion for judgment notwithstanding the verdict is denied . . . the appellate court shall, if it appears that the motion for judgment notwithstanding the verdict should have been granted, order judgment to be so entered on appeal from the judgment or from the order denying the motion for judgment notwithstanding the verdict"].)

In its supplemental brief, the HOA suggests that it did not have a "full and fair opportunity" to present its case. (*Frank*, *supra*, 149 Cal.App.4th at p. 833.) The HOA argues, "Here, the issue of 'a negligent act or omission or breach of contract, by MWI was not presented to the jury, and [the HOA] had no reason or opportunity to present such evidence because it was not relevant to the SB800 statute as it was being construed by the trial court." This argument might have had some force if the trial court had issued a ruling *prior* to the trial that obviated the need for the HOA to

46

present evidence of an element of its claim. However, that is not the case. The HOA points to no ruling by the trial court nor to any argument by MWI upon which it relied in failing to present sufficient evidence to prove its claim.

On the contrary, the HOA was placed "on notice of the potential importance of such evidence through the motions of defendants," (*Cassista v. Community Foods, Inc.* (1993) 5 Cal.4th 1050, 1066), including a motion for a directed verdict that MWI filed near the end of the trial.[51] In filing a motion for directed verdict in the trial court on the ground of insufficiency of the evidence, MWI afforded the HOA the opportunity to attempt "to introduce whatever further and additional evidence [it] may have at hand to overcome the grounds of the motion." (*Estate of Easton* (1931) 118 Cal.App. 659, 662.)[52] Notwithstanding such notice, the HOA *never* requested the opportunity to

---

[51] The HOA was put on notice of the potential insufficiency of its evidence by way of a jury instruction conference, MWI's motion for a directed verdict, and MWI's supplemental briefing on the issue. On each occasion, MWI contended that the HOA had failed to present evidence that MWI's negligence or breach of contract had caused a violation of the Act's standards, as required.

[52] In 1963, Code of Civil Procedure section 629 was amended to eliminate the requirement that a party file a motion for a directed verdict as a prerequisite to obtaining an order granting JNOV. (Compare Stats. 1963, ch. 205, § 1, p. 944 [directing the court to grant JNOV "whenever a motion for a directed verdict for the aggrieved party should have been granted had a previous motion been made"] with Stats. 1961, ch. 604, § 1, p. 1752 [directing the court to grant JNOV "[w]hen a motion for a directed verdict, which should have been granted, has been denied"]; see 7 Witkin, Cal. Procedure (5th ed. 2008) Trial, § 438 [describing change].)

Thus, MWI provided the HOA with *more* notice of the insufficiency of its evidence than was statutorily required in order for it to obtain a judgment in its favor on the ground of such insufficiency.

present additional evidence to meet the claimed insufficiency.[53]  Under these circumstances, fairness does not require that the HOA be given a second chance to prove its claim.  (See *Cardinal Health 301, Inc. v. Tyco Electronics Corp.* (2008) 169 Cal.App.4th 116, 153 [concluding that party had "full and fair opportunity" to present evidence in support of its claims and noting that "defendants brought several potentially dispositive motions challenging the sufficiency of the evidence," and that defendants moved for "judgment notwithstanding the verdict on the basis that the evidence was insufficient"].)

*Simons*, *supra*, 213 Cal.App.4th 1035, on which the HOA relies for the proposition that the power to grant a directed verdict "presupposes the directed verdict is sought on an issue that was presented at trial and on which the opposing party had an opportunity to present evidence," is clearly distinguishable.  (*Id.* at p. 1051.)  In *Simons*, the trial court *granted* a *plaintiff's* motion for JNOV on an issue that was "not alleged in plaintiff's complaint," was "not . . . litigated at trial," (*id.* at p. 1038) and on which the defendant contended it would have presented evidence if the issue had been raised at trial.  (*Id.* at p. 1043.)  In this case, we conclude that the trial court erred in *denying* a *defendant*'s motion for a directed verdict and motion for JNOV because the plaintiff failed to present evidence sufficient to prove the claim alleged in its complaint.

---

[53]     A trial court has discretion to permit a party opposing a motion for directed verdict the opportunity "to reopen for further evidence upon showing of good cause." (*Simons v. Ware* (2013) 213 Cal.App.4th 1035, 1051 (*Simons*).)

*Simons* does not constitute authority that a court may not grant a directed verdict where a plaintiff fails to carry its burden of proof on an element of its claim. On the contrary, that is the very purpose of a motion for a directed verdict and motion for JNOV. (*Cooper v. Takeda Pharmaceuticals America, Inc.* (2015) 239 Cal.App.4th 555, 572 [" 'Typically, if a defendant believes that the plaintiff has not presented substantial evidence to establish a cause of action, the defendant may move for a nonsuit if the case has not yet been submitted to the jury, a directed verdict if the case is about to be submitted, or a [JNOV] following an unfavorable jury verdict. . . . The function of these motions is to prevent the moving defendant from the necessity of undergoing any further exposure to legal liability when there is insufficient evidence for an adverse verdict' "].)

Finally, the HOA argues that the trial court's order denying the JNOV should be affirmed "given the lack of precedent construing Section 936." We disagree. The statute expressly states the standard of proof that we hold the Act requires and the sole relevant precedent interpreting section 936 stated "a product manufacturer is liable only where its 'negligent act or omission or a breach of contract' . . . caused a violation of the Act's standards." (*Greystone*, *supra*, 168 Cal.App.4th at p. 1216, quoting § 936, italics omitted.) In any event, to the extent that there was uncertainty in the law, the HOA had a "full and fair opportunity" to present evidence of a negligent act or omission or breach of contract by MWI, in case the HOA's interpretation of the statute was later deemed incorrect. (*Frank*, *supra*, 149 Cal.App.4th at p. 833.) No more is

49

required. MWI should not be required to undergo the burden of a second trial because the HOA interpreted the statute in a manner that proved erroneous.

Accordingly, we conclude that MWI is entitled to judgment because the HOA did not present sufficient evidence to establish MWI's liability under the Act.

## IV.

## DISPOSITION

The amended judgment and the trial court's order denying MWI's motion for JNOV are reversed. The matter is remanded to the trial court with directions to grant MWI's motion for a directed verdict, to enter judgment in favor of MWI, and to conduct any other necessary ancillary proceedings. MWI is entitled to costs on appeal.

AARON, J.

WE CONCUR:

HUFFMAN, Acting P. J.

NARES, J.