Filed 9/18/25  In re I.R. CA3

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| In re I.R., a Minor. | C103147 |
| V.R., | (Super. Ct. No. 24AD0009) |
| Petitioner and Respondent, | |
| v. | |
| J.C., | |
| Objector and Appellant. | |

Appellant J.C., father of minor I.R., appeals from the juvenile court's order terminating his parental rights under Family Code section 7825 and freeing minor for adoption.[1]  He contends substantial evidence does not support the juvenile court's termination of his parental rights under section 7825.  He further argues the case must be

---

[1] Further unspecified statutory references are to the Family Code.

1

conditionally reversed because the parties and the juvenile court failed to comply with the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (the ICWA). We agree with father regarding section 7825 and as a result do not reach the ICWA issue. We will reverse.

## I. BACKGROUND

In March 2024, minor's mother (mother) filed a petition to terminate father's parental rights under section 7822, subdivisions (a)(3) and (b) (abandonment) and section 7825, subdivision (a)(1) (unfitness due to felony conviction). Concurrently, mother and her husband (stepfather) filed an adoption request for stepfather to adopt then 10-year-old minor. Because the juvenile court declined to terminate father's parental rights under section 7822 but instead terminated them under section 7825, we focus on the facts related to that latter claim.

Mother met both stepfather and father in high school. Father and mother began dating in 2012 and were in a relationship at the time of conception. Mother was 16 years old when minor was born in 2013. Father visited once or twice a week after minor's birth and then obtained an order for visitation supervised by mother. He sought and obtained a modification of that visitation (when minor was six months old) to visit minor for two, two-hour visits supervised by minor's paternal grandparents.

Concerned about the way father parented minor (traveling in cars without car seats and leaving alcoholic beverages within minor's reach) and mixed with "continual harassment" from father, mother sought and obtained a domestic violence restraining order in late 2014. Further visitation was ordered to be conducted at a third-party visitation center. Mother reported these visits never happened. Mother asserted father did not have contact with minor between November 2014 and June 2019. Father asserted mother and stepfather historically prevented him from being a part of minor's life.

In her declaration, mother stated father is currently incarcerated in prison due to felony assault charges that occurred in July 2019. His earliest parole date is November

2

2025. Mother attached the amended information in father's case, a Facebook post from the El Dorado County District Attorney detailing father's conviction, and a complaint showing a charge of driving under the influence and resisting arrest in 2015. The Facebook post stated father was at a bar and violently assaulted a man in the parking lot after the bar closed by punching him at least once in the face. The victim was knocked unconscious, and his jaw was broken in two places requiring surgery. The district attorney reported an eyewitness said the victim did not provoke the assault and was not able to fight back. This post was not part of the court investigator's report, nor was it proffered or admitted as evidence at the contested parental rights termination proceedings.

Regarding this conviction, the adoption report limited its information to stating father assaulted a man in the parking lot of a bar by punching him once in the face and the victim sustained significant injuries. The report noted father was charged with felony assault causing great bodily harm but did not provide any details surrounding the assault or the nature of the victim's injuries. The report confirmed father began serving his sentence in October 2021 and would be eligible for parole in November 2025.

The court-appointed investigator concluded because father had no contact with minor since either October 2019 or March 2020, section 7822's requirements for terminating his parental rights based on abandonment had been met. The investigator further noted father had been convicted of a felony and had a past record of driving under the influence and resisting arrest, and recommended the juvenile court terminate father's parental rights and approve the stepparent adoption application.

At the contested hearing, mother, father, and the reunification therapist testified. An exhibit binder was provided to the juvenile court, and the parties referenced it during the proceedings, but it and the items in it were not entered into evidence and are not in the record.

During mother's testimony, the juvenile court informed the parties it understood the parties' background because it had the adoption report. Without objection, the juvenile court stated it was required to consider the report.

Mother testified father was not present when minor was born. When he arrived, he became so hostile that hospital security escorted him out of the premises. She also testified father had not seen minor for about four years prior to the juvenile court ordering reunification therapy. After reunification was ordered, father attended visitation for six or seven months, but the visits stopped near the end of 2019 or the beginning of 2020.

Mother testified she obtained a restraining order against father in January 2015, which expired in January 2018. Mother provided no details of father's conduct that warranted the restraining order and confirmed the order required her to have peaceful contact with the father when it came to issues related to minor. Mother testified she learned father had been sentenced to prison from Facebook.

The reunification therapist later confirmed the last two no-shows by father were February 18 and 27, 2020. She never heard from him after that. The therapist said that after Covid 19 restrictions were implemented, she allowed clients to appear by Zoom or to physically come in if they were comfortable doing so.

During the closing arguments, mother's counsel focused on the abandonment issue, although counsel did reference the 2015 restraining order. The juvenile court reminded the parties that mother's petition was based upon both sections 7822 (abandonment) and 7825 (felony conviction), and that the court would be considering section 7825 as well. Mother's counsel agreed the evidence demonstrated father had a felony conviction, but further stated, "I don't necessarily feel like [father's] felony convictions might necessarily bar him from having parental rights, . . . that's why none of the testimony or evidence presented was going down that path. We were focusing on the 7822."

4

After argument, the juvenile court ruled it would terminate father's parental rights, but not based on abandonment. The juvenile court found father's felony conviction was an act of significant violence that resulted in great bodily injury. The juvenile court then stated, combined with the domestic violence order, "I think that . . . establishes a pattern of behavior of violence that demonstrates he's unfit. I think that [father] has well intentions in terms of his desire to want to parent, and his desire to want to be part of his daughter's life, but that his other actions really demonstrated his inability to successfully do that, and in an appropriate and fit manner." The juvenile court continued, "She'll be 12 years old. Between 2014 and 2024, there's not anything really in the way of contact. And I believe . . . [father] didn't want to abandon his child, but he was making other decisions that caused that. And that's why I connect his conviction to this. It demonstrates his parental unfitness, that the crimes were of significant violence, and that is a continuation of the domestic violence—of the domestic violence restraining order, which is what really put that significant strain on his relationship with his daughter in the first place." Finding the above facts by clear and convincing evidence, the juvenile court terminated father's parental rights and freed minor for adoption.

Father filed a notice of appeal, which this court construed to be timely under the constructive filing doctrine.

## II. DISCUSSION

Father argues substantial evidence did not support the juvenile court's order terminating his parental rights under section 7825. We agree.

A petition to terminate parental rights under section 7825 may be filed where both of the following requirements are met: (1) the child is one whose parent or parents are convicted of a felony; and (2) the facts of the crime of which the parent or parents were convicted are of such a nature so as to prove the unfitness of the parent or parents to have future custody and control of the child. (§ 7825, subd. (a).) In making its determination regarding unfitness, "the court may consider the parent's criminal record prior to the

5

felony conviction to the extent that the criminal record demonstrates a pattern of behavior substantially related to the welfare of the child or the parent's ability to exercise custody and control regarding the child." (§ 7825, subd. (a)(2).)

The fundamental nature of parental rights requires clear and convincing evidence of the facts necessary to terminate such rights. (*In re Angelia P.* (1981) 28 Cal.3d 908, 919, superseded by statute on another issue as stated in *In re Cody W.* (1994) 31 Cal.App.4th 221, 229-230.) "The decision to terminate parental rights lies in the first instance within the discretion of the juvenile court, and will not be disturbed on appeal absent an abuse of that discretion." (*In re Baby Girl M.* (2006) 135 Cal.App.4th 1528, 1536.) A court abuses its discretion when it exercises it in an arbitrary, capricious, or patently absurd manner. (*People v. Williams* (2013) 58 Cal.4th 197, 270-271.) We review a juvenile court's factual findings under section 7825 for substantial evidence. (*In re Angelia P., supra*, at pp. 924-925 [former Civ. Code, § 232 (now § 7825)].)

As an initial matter, we reject father's contention the juvenile court could not consider the adoption report because it was not entered into evidence at the contested hearing. As father acknowledges, section 7851, subdivision (d) states, "The court shall receive the report in evidence and shall read and consider its contents in rendering the court's judgment." This required the juvenile court to receive the report, read it, and consider it when ruling. (*In re Noreen G.* (2010) 181 Cal.App.4th 1359, 1380.)

Here, the juvenile court did just that. The juvenile court informed the parties it had received the report, read it, and understood its contents, and that it was required to consider the report in making its decision. Neither party objected. The lack of objection alone forfeited father's right to contest the juvenile court's consideration of this report. (*In re Noreen G., supra*, 181 Cal.App.4th at p. 1379.) The juvenile court acted well within its discretion when it considered the adoption report.

Turning to the evidence in the record, father was convicted of felony assault with great bodily injury, and mother sought and obtained a restraining order against father.

But this evidence does not provide substantial evidence father is unfit to parent his child under section 7825.

*In re Baby Girl M.* is instructive. There, the father had felony convictions for attempted burglary, burglary, and possession of methamphetamine. (*In re Baby Girl M., supra*, 135 Cal.App.4th at p. 1533.) He also admitted he had numerous misdemeanor convictions, including two for domestic violence. (*Id.* at pp. 1533-1534.) The father testified he previously used methamphetamine, failed to enroll in domestic violence courses, and was not currently enrolled in a drug treatment program. (*Id.* at p. 1534.) Based on this evidence, the juvenile court found the father had been convicted of a felony, the facts of which were of such a nature to prove the father was unfit to have future custody of the minor. (*Ibid.*) The father appealed and the appellate court reversed, concluding these facts did not constitute substantial evidence to support the finding the father was unfit to have custody of his child. (*Id.* at pp. 1535, 1542-1543, 1546.) The appellate court reasoned, "In accordance with this statutory language, and the fact that the involuntary termination of parental rights is an extreme measure implicating core constitutional rights, section 7825's reach traditionally has been limited to those situations where a parent commits a heinous felony offense, often against a family member, which in and of itself demonstrates that the parent will be forever unfit to have any measure of custody of his or her children." (*Id.* at p. 1531.)

Here, the juvenile court stated father's felony conviction was "an act of significant violence, and it resulted in, and he was convicted of, great bodily injury." But while the adoption report stated father punched someone in the face outside of a bar and injured the person, it is devoid of any facts detailing the violent nature of the assault or the extent of the victim's injuries. The adoption report cannot be augmented by the Facebook post attached to the petition because that document is riddled with hearsay and was not offered or accepted into evidence at the hearing. Thus, the Facebook post does not provide substantial evidence as to the violent nature of that incident. (See *Acqua Vista*

*Homeowners Assn. v. MWI, Inc.* (2017) 7 Cal.App.5th 1129, 1159-1160 [document lodged but not admitted into evidence could not constitute substantial evidence to support a verdict].)

Furthermore, this single incident of violence is not the type of heinous crime that typically supports a finding terminating parental rights. (See, e.g., *In re Sarah H.* (1980) 106 Cal.App.3d 326, 328, [father beat the mother to death in the children's presence, and four months later he killed a man in a bar]; *In re Geoffrey G.* (1979) 98 Cal.App.3d 412, 420 [father violently strangled the child's mother after having consumed a substantial amount of intoxicants and his criminal record showed numerous past arrests and convictions for intoxication]; *In re Mark V.* (1986) 177 Cal.App.3d 754, 756 [father fatally stabbed the mother while the children were asleep in the home].)

Even mother's counsel stated, "I don't necessarily feel like [father's] conviction might necessarily bar him from having parental rights," and as a result they focused their efforts on demonstrating father had abandoned his daughter.

The second fact the juvenile court cited supporting its order was the 2015 domestic violence restraining order, which expired in 2018. The record fails to disclose the facts supporting the issuance of this order. The record does not contain the restraining order, the application for that order, or the hearing transcript of those proceedings. Neither the adoption report nor mother provided any details about the nature of the "continual harassment" father committed against her. While the parties referenced an exhibit binder during the hearing, no exhibits were marked for the record or admitted. Thus, no admissible evidence existed, much less substantial evidence, upon which the juvenile court could base its conclusion that this was a second point of violence exhibited by father, much less the type of extreme violence that demonstrates unfitness of a parent. (*Acqua Vista Homeowners Assn. v. MWI, Inc., supra,* 7 Cal.App.5th at pp. 1159-1160.) Without any evidence as to the nature of the underlying conduct, the

8

trial court could not connect this order to the violence arising out of his assault conviction to assert father was an unfit parent.

Thus, we conclude the juvenile court's finding that father's felony conviction for violent assault coupled with allegations of past domestic violence demonstrated a pattern of violent behavior that rendered father an unfit parent is not supported by substantial evidence in the record. The trial court's finding to the contrary exceeded the bounds of its permissible discretion. We therefore must reverse the order of the juvenile court.[2]

### III.  DISPOSITION

The order terminating parental rights is reversed.


/S/

RENNER, J.


We concur:

/S/

EARL, P. J.

/S/

FEINBERG, J.

---

[2] Because we reverse on the merits, we have no occasion to reach father's claims under the ICWA.